BEFORE THE
U.S. COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| CLEVELAND-CLIFFS INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Ct. No. 22-00257 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

Plaintiff, Cleveland-Cliffs Inc., ("Plaintiff"), by and through its attorneys, alleges and states as follows:

### ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1. Plaintiff contests the U.S. International Trade Commission's (the "Commission") final negative likely injury determination for Brazil in the five-year reviews of the antidumping and countervailing duty orders on *Cold-Rolled Steel Flat Products from Brazil, China, India, Japan, South Korea, and The United Kingdom,* Inv. Nos. 701-TA-540-543 and 731-TA-1283-1287 and 1290 (Review), USITC Pub. 5339 (August 2022) ("*Views*"). The Commission's negative determination for Brazil was published at 87 Fed. Reg. 49,886 (August 12, 2022).

### JURISDICTION

2. This Court has jurisdiction over this action to review the Commission's negative likely injury determination for Brazil pursuant to 28 U.S.C. § 1581(c), because this action was commenced under Sections 516A(a)(2)(A)(i)(I) and (B)(iii) of the Tariff Act of 1930, *as*

*amended*, 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (B)(iii).

## STANDING

3.     Plaintiff is a domestic producer of the cold-rolled steel products that were the domestic like product in the underlying reviews. Plaintiff is, therefore, an interested party within the meaning of 19 U.S.C. §§ 1561a(f)(3) and 1677(9)(C). Plaintiff also participated as a party in the reviews below. Accordingly, Plaintiff has standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF ACTION

4.     Plaintiff commenced this action by filing a summons on September 9, 2022, which is within 30 days of the publication in the Federal Register of the Commission's final negative determination for Brazil. *See* Summons (Ct. Int'l Trade, Ct. No. 22-00257, September 9, 2022), ECF No. 1; *Cold-Rolled Steel Flat Products from Brazil, China, India, Japan, South Korea, and The United Kingdom,* 87 Fed. Reg. 49,886 (August 12, 2022). This complaint is being filed within 30 days after the filing of the summons. The summons and complaint are therefore timely filed pursuant to 19 U.S.C. §§ 1516a(a)(2) and Rules 3(a)(b)(2) and 6(a) of this Court.

## THE ADMINISTRATIVE PROCEEDING

### I.     The Original Investigation and the Orders

5.     On July 28, 2015, AK Steel Corporation, ArcelorMittal USA LLC,[1] Nucor Corporation, Steel Dynamics Inc., and United States Steel Corporation filed antidumping and

---

[1] AK Steel Corporation and ArcelorMittal USA were acquired by Cleveland-Cliffs in 2020. According, Cleveland-Cliffs is the successor-in-interest to these two producers.

countervailing duty petitions on cold-rolled steel imports from Brazil, China, India, Japan, South Korea, the Netherlands, Russia, and the United Kingdom. *Views* at 3.[2]

6. In July and September 2016, the Commission determined that the domestic cold-rolled steel industry was materially injured by reason of the subject imports of cold-rolled steel from Brazil, China, India, Japan, South Korea, and the United Kingdom. *Views* at 3-4. Accordingly, in July and September 2016, the Department of Commerce published antidumping and/or countervailing duty orders on the subject imports from these six countries. *Views* at 3-4.[3]

## II.   The Five-Year Reviews of the Cold-Rolled Steel Orders

7. On June 21, 2021, the Commission instituted its first five-year reviews of the antidumping and countervailing duty orders on cold-rolled steel from Brazil, China, India, Japan, South Korea, and the United Kingdom. *Views* at 4. During the reviews, Cleveland-Cliffs and other members of the domestic industry demonstrated that the subject imports of cold-rolled steel from Brazil would likely have a discernible adverse impact on the domestic industry and that they would be likely to compete with each other and the domestic like product upon revocation. *Views* at 17-18.

8. Cleveland-Cliffs and other domestic producers also demonstrated that subject imports from Brazil would compete under the same conditions of competition as the other subject imports and the domestic like product. *Views* at 17-18. Accordingly, they argued that subject imports from all six countries, including Brazil, should be cumulated and that the

---

[2] During the investigations, the Commission found that the subject imports of cold-rolled steel from the Netherlands and Russia were negligible and therefore terminated the investigations for the subject imports from these two countries.   Views at 4, n. 5.
[3] Commerce published antidumping orders on all six subject countries and published countervailing duty orders on Brazil, China, India, and South Korea.

Commission should find that cumulated subject imports would be likely to cause material injury to the domestic industry upon revocation of the orders. Views at 17-18 & 67.

9. In its determinations in the reviews, a divided Commission chose not to cumulate subject imports from Brazil with the other subject imports. Views at 45. Chairman Johanson, Commissioner Karpel and Commissioner Kearns chose not to cumulate the subject imports from Brazil with the other subject imports. Although these Commissioners found that subject imports from Brazil would likely have a discernible adverse impact on the domestic industry and would be likely to compete with each other and the domestic like product if the orders were revoked, *id*. at 23-23 & 36-41, they exercised their discretion under the statute not to cumulate the subject imports from Brazil with other subject imports. Views at 42-45.[4]

10. In reaching this decision, these Commissioners relied heavily on the fact that the quota imposed on the cold-rolled steel imports from Brazil under section 232 of the Trade Expansion Act of 1962 (19 U.S.C. §1862) was "only" 57,251 short tons.[5] Views at 43. According to the Commission majority, this fact meant that imports of cold-rolled steel from the other subject countries were "in a position to compete for much larger volumes of sales than any of the subject producers in Brazil which must share the quota limits." Views at 43.

11. As a result, the Commission majority found the Brazilian imports would compete under different conditions of competition than other subject imports, including Korean imports, even though the other subject imports were also subject to section 232 measures and the Korean imports (like imports from Brazil) were subject to an absolute quota under Section 232. The Commission majority distinguished the quota on Korea from the quota on Brazil by pointing out

---

[4] The Commission did cumulate the subject imports from the other five countries. Views at 45.
[5] *Cold Rolled Views* at 43.

that the annual quota limit for Korea (141,018 short tons) was larger than the annual quota limit for Brazil (57,218 short tons).  Views at 43.

12.     In its analysis for Brazil, the Commission majority also relied heavily on the fact that "nothing in the record of these reviews indicates that the section 232 trade action, an absolute quota, as it relates to imports of CRS {cold-rolled steel} from Brazil will be terminated in the reasonably foreseeable future."  Views at 72.  They stated that "the quota has been in place" since being imposed in March 2018 and that "there has been no announcement by the Administration that it is considering revising or removing the quota on Brazil in the reasonably foreseeable future."  Views at 72.  As a result, they concluded that "the section 232 trade action, as currently structured and enforced, likely will continue through the reasonably foreseeable future."  Views at 72.

13.     After deciding not to cumulate the subject imports from Brazil with the imports from the other subject countries, the Commission majority determined that cumulated subject imports from China, India, Japan, South Korea, and the United Kingdom would likely cause the continuation or recurrence of material injury to the domestic industry if the orders were revoked. Views at 46-68.  With respects to the subject imports from Brazil, however, they determined that Brazilian imports would not likely cause material injury to the domestic industry upon revocation, once again relying heavily on the facts that Brazilian imports were subject to a quota under section 232 and that this quota was smaller than the quota on imports from Korea.  Views at 71-72.

14.     Commissioners Schmidtlein and Stayin dissented from the Commission majority's findings with respect to Brazil.  Views at 75-79.  They found that the difference in quota levels between Brazil, South Korea and the other subject did not constitute a different

likely condition of competition for Brazil that warranted decumulating imports from Brazil. Views at 78. They noted that (i) the subject imports from South Korea were also subject to a quota, (ii) neither country had filled the quota, (iii) the volumes of all the subject countries were likely to increase after revocation, and (iv) imports from Brazil, South Korea and the other subject countries had undersold the domestic like product in a majority of instances and were priced aggressively during period of investigation. Views at 78-79.

15. Accordingly, Commissioners Schmidtlein and Stayin concluded that, "while one may argue that the difference in quota levels between Brazil and South Korea may ultimately have a different impact on the domestic industry (and that is debatable), the difference in quota levels does not lead to the subject imports from Brazil competing differently than the subject imports from South Korea or any other country." Views at 79.

16. To summarize, the Commission unanimously issued an affirmative likely injury determination for the subject imports from China, India, Japan, South Korea, and the United Kingdom. Views at 74. The Commission issued a negative determination for the subject imports from Brazil, with two members of the Commission dissenting from that decision. *Id*.

## CLAIMS AND BASES FOR RELIEF

### COUNT I

17. Petitioner hereby realleges and incorporates by reference paragraphs 1 through 16. The Commission majority's determination not to cumulate the subject imports from Brazil with the subject imports from China, India, Japan, South Korea, and the United Kingdom was not in accordance with law.

18. The U.S. Court of International Trade has stated that, when the Commission bases its "conditions of competition" analysis on the absolute likely volumes of the imports as part of

its cumulation analysis, it is engaged in "an impermissible circular {likely injury} analysis" under the statute. *Nucor Corporation v. United States*, 605 F. Supp. 2d 1361, 1370, n. 12 (Ct. Int'l Trade 2009); *Allegheny Ludlum Corporation v. United States*, 475 F. Supp. 2d 1370, 1378-79 (Ct. Int'l Trade 2006); *Neenah Foundry Co. v. United States*, 155 F. Supp. 2d 766, 771-777 (Ct. Int'l Trade 2001).

19. By focusing almost exclusively on the likely volume of the Brazilian imports in its cumulation analysis in the cold-rolled steel investigation, the Commission conducted the same "circular" injury analysis that the Court has described as "impermissible" in *Nucor v. United States*, *Allegheny Ludlum v. United States*, and *Neenah Foundry v. United States*.

## COUNT TWO

20. Petitioner hereby realleges and incorporates by reference paragraphs 1 through 19. The Commission's determination not to cumulate the subject imports from Brazil was not supported by substantial evidence.

21. In its cumulation analysis for Brazil, the Commission majority found that "nothing in the record of these reviews indicates that the section 232 indicates that the section 232 trade action, an absolute quota, as it relates to imports of CRS from Brazil will be terminated in the reasonably foreseeable future" and that "there has been no announcement by the Administration that it is considering revising or removing the quota on Brazil in the reasonably foreseeable future." Views at 72. The Commission majority also emphasized that "the section 232 trade action, as currently structured and enforced," likely will continue through the reasonably foreseeable future." Views at 72.

22. These findings are not supported by substantial evidence. Cleveland-Cliffs and the other members of the domestic industry placed on record evidence indicating that, in the

months leading up to the Commission's determination in the cold-rolled steel review, the President had revised the section 232 tariffs for the European Union, the United Kingdom and Japan.  Moreover, Cleveland-Cliffs and the other domestic producers also placed on record evidence indicating that the governments of Brazil and South Korea were both urging the Administration to weaken Section 232 relief with respect to those countries.

23. Despite the strong evidence submitted by domestic producers on this issue, the Commission did not address this evidence at all when finding that "nothing in the record of these reviews indicates that the section 232 indicates that the section 232 trade action, an absolute quota, as it relates to imports of CRS from Brazil will be terminated in the reasonably foreseeable future."  Given this failure, the Commission's decision not to cumulate Brazil with the other subject countries was not supported by substantial evidence as a whole.

## COUNT III

24. Petitioner hereby realleges and incorporates by reference paragraphs 1 through 23.  The Commission's determination not to cumulate the subject imports from Brazil was not in accordance with law because it was inconsistent with its prior decisions addressing the impact of section 232 on the volume and pricing of subject imports.

25. Prior to its decision for Brazil in the cold-rolled steel reviews, the Commission had typically not relied on the section 232 tariffs, quotas, and tariff rate quotas as a basis for exercising its discretion not to cumulate the subject imports.  On the contrary, in cases like *Clad Steel Plate from Japan*,[6] *Non-Oriented Electrical Steel from China, Germany, Japan, Korea Sweden and Taiwan*,[7] *Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico,*

---

[6] *Clad Steel Plate from Japan, Inv. Nos. 731-TA-739 (Fourth Review), USITC Pub. 4851 (Dec. 2018)* at 19.
[7] *Non-Oriented Electrical Steel from China, Germany, Japan, Korea, Sweden, and Taiwan, Inv. Nos. 701-TA-506 and 508 and 731-TA-1238-1243 (Review), USITC Pub. 5140 (Dec. 2020)* at 33 n. 189.  The reference to Section 301

*Moldova, and Trinidad and Tobago*,[8] *Tin- and Chromium-Coated Steel Sheet from Japan*,[9] and *Certain Corrosion-Resistant Steel Products from China, India, Italy, South Korea and Taiwan*,[10] the Commission cumulated the subject imports from all subject countries, even though many were subject to section 232 tariffs, quotas and tariff rate quotas.

26. In its decision for Brazil, the Commission failed to address its departure from this practice, rendering its decision not otherwise in accordance with law.

## COUNT IV

27. Petitioner hereby realleges and incorporates by reference paragraphs 1 through 26. As described above, the Commission's decision not to cumulate the subject imports with Brazil with the other subject imports was not supported by substantial evidence and not otherwise in accordance with law.

28. As a result, the Commission's negative likely injury determination for Brazil, by itself, was not supported by substantial evidence or otherwise in accordance law.

## REQUEST FOR JUDGMENT AND RELIEF

For the reasons stated in this Complaint, Plaintiff respectfully requests that the Court:

1) Hold that the Commission's final negative determination for Brazil in *Cold-Rolled Steel Flat Products from Brazil, China, India, Japan, South Korea, and The United Kingdom,* Investigation Nos. 701-TA-540-543 and 731-TA-1283-1287 and 1290 (Review),

---

duties refers to duties imposed on certain imports from China pursuant to Section 301 of the Trade Act of 1974, as amended.
[8] *Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, and Trinidad and Tobago, Inv. Nos. 701-TA-417 and 731-TA-953, 957-959, and 961 (Third Review), USITC Pub. 5100 (Aug. 2020) at 46 n. 298.*
[9] *Tin- and Chromium-Coated Steel Sheet from Japan, Inv. Nos. 731-TA-860 (Third Review), USITC Pub. 4795 (June 2018) at 21.*
[10] *Certain Corrosion-Resistant Steel Products from China, India, Italy, South Korea and Taiwan*, *Inv. Nos. 701-TA-534-537 & 731-TA-1274-1278 (Review), USITC Pub. 5337 (Aug. 2022) at 51 ("CORE Views").*

USITC Pub. 5339 (August 2022) ("USITC Pub. 5031") was unsupported by substantial evidence and otherwise not in accordance with law; and

    2)      Remand the Commission's final determination for Brazil in that review to the Commission for disposition consistent with the Court's final opinion in this matter.

                                      Respectfully submitted,

                                      */s/ Stephen P. Vaughn*
                                      Stephen P. Vaughn, Esq.
                                      Neal J. Reynolds, Esq.
                                      Barbara Medrado, Esq.
                                      **KING & SPALDING LLP**
                                      1700 Pennsylvania Ave., N.W.
                                      Washington, DC 20006
                                      (202) 737-0500

                                      *Counsel for Cleveland-Cliffs Inc.*

Dated: October 5, 2022

# CERTIFICATION OF SERVICE
*Cleveland-Cliffs Inc. v. United States*
Court No. 22-cv-00257

This is to certify that on October 5, 2022 I have caused a copy of the foregoing **COMPLAINT** to be served upon the following parties via certified mail, return receipt requested, at the following addresses:

Attorney-in-Charge
International Trade Field Office
Commercial Litigation Branch
Civil Division
**U.S. Department of Justice**
26 Federal Plaza
Room 346, Third Floor
New York, NY 10278

Supervising Attorney
Commercial Litigation Branch
Civil Division
**U.S. Department of Justice**
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

The Honorable Katherine Hiner
Acting Secretary
**U.S. International Trade Commission**
500 E Street, SW
Washington, DC 20436

Andrea C. Casson
Assistant General Counsel for Litigation
Office of the General Counsel
**U.S. International Trade Commission**
500 E Street, SW
Washington, DC 20436

David A.J. Goldfine
Attorney-Advisor
Office of the General Counsel
**U.S. International Trade Commission**
500 E Street, SW
Washington, DC 20436

Roger B. Schagrin, Esq.
**Schagrin Associates**
900 Seventh Street, NW
Suite 500
Washington, DC 20001

Alan H. Price, Esq.
**Wiley Rein LLP**
2050 M Street, NW
Washington, DC 20036

Thomas M. Beline, Esq.
**Cassidy Levy Kent (USA) LLP**
900 19th Street, NW
Fourth Floor
Washington, DC 20006

Chunlian (Lian) Yang, Esq.
**Alston & Bird LLP**
950 F Street, NW
Washington, DC 20004

Lucas A. Queiroz Pires, Esq.
**Alston & Bird LLP**
950 F Street, NW
Washington, DC 20004

Kathleen W. Cannon, Esq.
**Kelley Drye & Warren LLP**
3050 K Street, NW, Suite 400
Washington, DC 20007

Thomas E. Skilton, Esq.
**Cameron LLP**
818 Connecticut Avenue, NW
Suite 900
Washington, DC 20006

| | |
|---|---|
| Craig A. Lewis, Esq.<br>**Hogan Lovells US LLP**<br>555 Thirteenth Street, NW<br>Washington, DC 20004 | Roy Houseman<br>**United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial, and Service Workers International Union**<br>1155 Connecticut Avenue, NW, #500<br>Washington, DC 20036 |
| Thomas J. Trendl, Esq.<br>**Steptoe & Johnson LLP**<br>1330 Connecticut Avenue, NW<br>Washington, DC 20036-1795 | |
| Richard L.A. Weiner, Esq.<br>**Sidley Austin LLP**<br>1501 K Street, NW<br>Washington, DC 20005 | Aluisio de Lima-Campos<br>**Embassy of Brazil**<br>3006 Massachusetts Avenue, NW<br>Washington, DC 20008 |

                                            */s/ Stephen P. Vaughn*
                                            Stephen P. Vaughn
                                            KING & SPALDING LLP
                                            1700 Pennsylvania Avenue, NW
                                            Washington, DC 20006
                                            (202) 737-0500