*PUBLIC VERSION*

---

**UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

---

**Court No. 22-00257**

---

**CLEVELAND-CLIFFS INC.,**

*Plaintiff*,

**and**

**NUCOR CORPORATION, STEEL DYNAMICS, INC.,
UNITED STATES STEEL CORPORATION,**

*Plaintiff-Intervenors*,

**v.**

**UNITED STATES,**

*Defendant*,

**and**

**COMPANHIA SIDERURGICA NACIONAL S.A.,
COMPANHIASIDERURGICA NACIONAL, LLC, USINAS
SIDERURGICAS DE MINAS GERAIS S.A. USIMINAS,**

*Defendant-Intervenors*.

---

**DEFENDANT UNITED STATES INTERNATIONAL TRADE COMMISSION'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S AND PLAINTIFF-
INTERVENORS' MOTION FOR JUDGMENT ON THE AGENCY RECORD**

---

**DAVID A. GOLDFINE**
Attorney for Defendant
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC  20436
Telephone (202) 708-5452
Fax (202) 205-3111

**DATED:  JUNE 13, 2023**

**DOMINIC L. BIANCHI**
General Counsel
Telephone (202) 205-3061

**ANDREA C. CASSON**
Assistant General
    Counsel for Litigation
Telephone (202) 205-3105

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. iv

I.  STATEMENT PURSUANT TO RULE 56.2 ...................................................1

    A.  Administrative Determination Sought to be Reviewed ............................1

    B.  Question Presented and Summary of Argument.......................................2

        1.  Was the Commission's Exercise of its Discretion Not to
            Cumulate Subject Imports from Brazil with Subject
            Imports from China, India, Japan, South Korea, and the
            United Kingdom Supported by Substantial Evidence and in
            Accordance with Law? ................................................................2

II.  STATEMENT OF FACTS ...........................................................................3

    A.  Procedural Background...........................................................................3

    B.  Summary of Commission Views .............................................................5

III.  STANDARD OF REVIEW .........................................................................7

IV.  ARGUMENT .............................................................................................9

    A.  The Commission Reasonably Declined to Cumulate All Subject
        Imports ..................................................................................................9

        1.  Cumulation Is Discretionary in Five-Year Reviews...................9

            a.  Relevant Statutory Provision ...........................................9

            b.  Plaintiffs Seek to Impose a Requirement for
                Cumulation in Certain Sunset Reviews .........................11

    B.  The Commission's Decision Not to Cumulate Subject Imports
        from Brazil with Subject Imports from China, India, Japan, South
        Korea, and the United Kingdom Was Supported by Substantial
        Evidence and in Accordance with Law ...................................................13

        1.  Substantial Evidence Supports the Commission's Findings
            Underlying Its Determination Not to Cumulate the Imports
            from Brazil with the Imports from the Other Subject
            Countries ................................................................................13

        2.  The Commission's Reliance on the Differences in
            Conditions of Competition to Decline to Cumulate in a
            Sunset Review Has Been Upheld by the Reviewing Courts.....................16

    C.  Plaintiffs Have Failed to Show that the Commission Erred in
        Exercising Its Discretion Not to Cumulate Subject Imports from
        Brazil....................................................................................................17

**TABLE OF CONTENTS (cont'd)**

1.  Plaintiffs' Circularity Argument Does Not Withstand
    Scrutiny and Has Been Previously Rejected by this Court........................17

    a.  Plaintiffs' Circularity Argument Ignores the
        Commission's Actual Factual Findings and
        Analysis.............................................................................................17

    b.  Plaintiffs Rely on Cases that Upheld the
        Commission's Analysis and Support the
        Commission's Exercise of Discretion Not to
        Cumulate Imports from Brazil in this Case ..................................21

2.  The Commission Addressed Other Evidence that Plaintiffs
    Claim Was Ignored ...............................................................................27

3.  The Findings of Two Dissenting Commissioners Have No
    Bearing on the Court's Review of the Commission's
    Findings.................................................................................................29

4.  The Commission Did Not Depart from Any "Past Practice"
    In Its Discretionary Cumulation Analysis.................................................31

**V.    CONCLUSION** ...................................................................................**34**

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*Ad Hoc Comm. of Domestic Uranium Producers v. United States*,
    25 CIT 1010, 162 F. Supp. 2d 649 (2001) ......................................................10, 12, 17, 27, 33

*Allegheny Ludlum Corp. v. United States*,
    30 CIT 1995, 475 F. Supp. 2d 1370 (2006) ................................................................ *passim*

*Altx, Inc. v. United States*,
    25 CIT 1100, 167 F. Supp. 2d 1353 (2001) ...........................................................................20

*Am. Bearing Mfrs. Ass'n v. United States*,
    28 CIT 1698, 350 F. Supp. 2d 1100 (2004) ...........................................................................19

*Cleo Inc. v. United States*,
    501 F.3d 1291 (Fed. Cir. 2007) ..............................................................................................32

*Coal. of Gulf Shrimp Indus. v. United States*,
    71 F. Supp. 3d 1356 (Ct. Int'l Trade 2015) ............................................................................8

*Cogne Acciai Speciali S.P.A. v. United States*,
    29 CIT 1168 (2005) ................................................................................................................10

*Consolo v. Fed. Mar. Comm'n*,
    383 U.S. 607 (1966) ......................................................................................................7, 29, 31

*Goss Graphics Sys., Inc. v. United States*,
    22 CIT 983, 33 F. Supp. 2d 1082 (1998),
    *aff'd*, 216 F.3d 1357 (Fed. Cir. 2000) .....................................................................................8

*Grupo Indus. Camesa v. United States*,
    85 F.3d 1577 (Fed. Cir. 1996) .......................................................................................7, 8, 29

*Hitachi Metals, Ltd. v. United States*,
    949 F.3d 710 (Fed. Cir. 2020) ................................................................................................32

*Matsushita Elec. Indus., Ltd. v. United States*,
    750 F.2d 927 (Fed. Cir. 1984) .................................................................................................9

*Maverick Tube Corp. v. United States*,
    2016 WL 703575 (Ct. Int'l Trade Feb. 22, 2016),
    *aff'd*, 857 F.3d 1353 (Fed. Cir. 2017) ...................................................................................30

*Metallverken Nederland B.V. v. United States*,
    13 CIT 1013, 728 F. Supp. 730 (1989) ..................................................................................30

## TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)**                                                                                    **Page(s)**

*MTD Prods. Inc. v. United States,*
  2023 WL 2535885 (Ct. Int'l Trade Mar. 16, 2023) .........................................................30, 31

*Neenah Foundry Co. v. United States,*
  25 CIT 702, 155 F. Supp. 2d 766 (2001) ........................................................................ *passim*

*Nevinnomysskiy Azot v. United States,*
  32 CIT 642, 565 F. Supp. 2d 1357 (2008) ................................................................................8

*Nippon Steel Corp. v. United States,*
  458 F.3d 1345 (Fed. Cir. 2006) ...............................................................................8, 9, 16

*Nucor Corp. v. United States,*
  28 CIT 188, 318 F. Supp. 2d 1207 (2004) .............................................................................20

*Nucor Corp. v. United States,*
  32 CIT 1380, 594 F. Supp. 2d 1320 (2008),
  *aff'd,* 601 F.3d 1291 (Fed. Cir. 2010) .................................................................11, 17, 27, 33

*Nucor Corp. v. United States,*
  32 CIT 751, 569 F. Supp. 2d 1328 (2008) ............................................................12, 17, 33

*Nucor Corp. v. United States,*
  33 CIT 157, 605 F. Supp. 2d 1361 (2009) ..................................................................... *passim*

*Nucor Corp. v. United States,*
  601 F.3d 1291 (Fed. Cir. 2010) ...............................................................................11, 17, 27, 33

*Ranchers-Cattlemen Action Legal Found. v. United States,*
  23 CIT 861, 74 F. Supp. 2d 1353 (1999) ................................................................................33

*Siemens Energy, Inc. v. United States,*
  38 CIT 879, 992 F. Supp. 2d 1315 (2014),
  *aff'd,* 806 F.3d 1367 (Fed. Cir. 2015) ...............................................................................28

*Siemens Energy, Inc. v. United States,*
  806 F. 3d 1367 (Fed. Cir. 2015) .............................................................................7, 29, 31

*U.S. Steel Corp. v. United States,*
  32 CIT 832, 572 F. Supp. 2d 1334 (2008) ...........................................................11, 17, 27, 33

*U.S. Steel Corp. v. United States,*
  36 CIT 1172, 856 F. Supp. 2d 1318 (2012) .........................................................11, 17, 27, 33

## <u>TABLE OF AUTHORITIES (cont'd)</u>

**Cases (cont'd)**                                                                    **Page(s)**

*U.S. Steel Grp. v. United States*,
    96 F.3d 1352 (Fed. Cir. 1996)........................................................................8, 9

*Ugine-Savoie Imphy v. United States*,
    26 CIT 851, 248 F. Supp. 2d 1208 (2002) .............................................................31

*Universal Camera Corp. v. NLRB*,
    340 U.S. 474 (1951) ..................................................................................................8

*Usinor v. United States*,
    28 CIT 1107, 342 F. Supp. 2d 1267 (2004) .............................................................8

**Statutes**

19 U.S.C. § 1675(b) ......................................................................................................9

19 U.S.C. § 1675(c) ......................................................................................................4

19 U.S.C. § 1675a(a)(7)..........................................................................2, 10, 11, 12, 26

19 U.S.C. § 1677(7)(G)(i)..........................................................................................10

19 U.S.C. § 1677(7)(H)..............................................................................................10

19 U.S.C. § 1862 ..........................................................................................................5

Trade Expansion Act of 1962, Section 232 ........................................................ *passim*

**Federal Register Materials**

81 Fed. Reg. 45,956 (Dep't of Commerce) (July 14, 2016) ........................................3

81 Fed. Reg. 45,960 (Dep't of Commerce) (July 14, 2016) ........................................3

81 Fed. Reg. 64,432 (Dep't of Commerce) (Sept. 20, 2016).......................................4

81 Fed. Reg. 64,436 (Dep't of Commerce) (Sept. 20, 2016).......................................4

87 Fed. Reg. 52,360 (Dep't of Commerce) (Aug. 25, 2022)....................................1, 5

**Legislative History Materials**

H.R. Rep. 103-316, vol. I (1994) ..........................................................................10, 26

## TABLE OF AUTHORITIES (cont'd)

**USITC Publications**                                                                    **Page(s)**

*Carbon and Alloy Steel Cut-to-Length Plate from Austria, Belgium, Brazil, China, France, Germany, Italy, Japan, South Africa, South Korea, Taiwan, and Turkey,*
Inv. Nos. 701-TA-560–561 & 731-TA-1317–1328 (Review),
USITC Pub. 5399 (Jan. 2023) ...................................................................................33

*Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, and Trinidad and Tobago,*
Inv. Nos. 701-TA-417 and 731-TA-953, 957–959, and 961 (Third Review),
USITC Pub. 5100 (Aug. 2020) ...................................................................................32

*Clad Steel Plate from Japan,*
Inv. Nos. 731-TA-739 (Fourth Review), USITC Pub. 4851 (Dec. 2018) .............................32

*Cold-Rolled Steel Flat Products from Brazil, India, Korea, Russia, and the United Kingdom,*
Inv. Nos. 701-TA-540, 542-544 and 731-TA-1283, 1285, 1287 and 1289-1290
(Final), USITC Pub. 4637 (Sept. 2016) ...................................................................4

*Cold-Rolled Steel Flat Products from China and Japan,*
Inv. Nos. 701-TA-541 and 731-TA-1284 and 1286 (Final),
USITC Pub. 4619 (July 2016) ...................................................................................3

*Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom,*
Inv. Nos. 701-TA-545–546 and 731-TA-1291–1297 and 731-TA-808 (Fourth
Review), USITC Pub. 5380 (Nov. 2022) ...................................................................33

*Non-Oriented Electrical Steel from China, Germany, Japan, Korea, Sweden, and Taiwan,*
Inv. Nos. 701-TA-506 and 508 and 731-TA-1238–1243 (Review),
USITC Pub. 5140 (Dec. 2020) ...................................................................................32

*Stainless Steel Sheet and Strip From France, Germany, Italy, Japan, Korea, Mexico, Taiwan, and the United Kingdom,*
Inv. Nos. 701-TA-381–382 and 731-TA-797-804 (Review),
USITC Pub. 3788 (July 2005) ...................................................................................*26*

*Tin- and Chromium-Coated Steel Sheet from Japan,*
Inv. Nos. 731-TA-860 (Third Review), USITC Pub. 4795 (June 2018) ..............................32

Defendant U.S. International Trade Commission ("Commission") hereby opposes the motion for judgment upon the agency record filed by Plaintiff Cleveland-Cliffs, Inc. and Plaintiff-Intervenors (collectively "Plaintiffs").  As discussed below, the Commission's negative five-year review ("sunset") determinations concerning the antidumping and countervailing duty orders on imports of cold-rolled steel flat products ("CRS") from Brazil are supported by substantial evidence and otherwise fully in accordance with law. We respectfully ask this Court to affirm these determinations.

## I.    STATEMENT PURSUANT TO RULE 56.2

### A.    Administrative Determination Sought to be Reviewed

Plaintiffs seek review of the Commission's negative determinations for Brazil in the five-year reviews concerning *Cold-Rolled Steel Flat Products from Brazil, China, India, Japan, South Korea, and the United Kingdom*, Inv. Nos. 701-TA-540-543 and 731-TA-1283-1287 (Review), USITC Pub. 5339 (Aug. 2022) (PR300).[1]  The Commission published notice of the negative determinations for Brazil on August 12, 2022.  87 Fed. Reg. 49,886 (PR298) (Aug. 12, 2022).[2] As a result, the Department of Commerce ("Commerce") revoked the antidumping and countervailing duty orders on cold-rolled steel flat products from Brazil.  87 Fed. Reg. 52,360 (Dep't of Commerce) (Aug. 25, 2022).

---

[1] Citations to the public record are indicated by "PR," referring to list number 1 on the index of the administrative record, and citations to the confidential record are indicated by "CR," referring to list number 2 on the index of the administrative record.  Accordingly, citations to the Commission's public views and publication are to record document PR300, and citations to the confidential Commission Views (hereinafter, "Views") are to record document CR250.

[2] The Commission reached affirmative determinations with respect to China, India, Japan, South Korea, and the United Kingdom.  Only the Commission's negative determinations for Brazil are at issue in this appeal.

B.      **Question Presented and Summary of Argument**

1.      **Was the Commission's Exercise of its Discretion Not to Cumulate Subject Imports from Brazil with Subject Imports from China, India, Japan, South Korea, and the United Kingdom Supported by Substantial Evidence and in Accordance with Law?**

Yes.  Under the statute, cumulation in five-year reviews is discretionary.  19

U.S.C. § 1675a(a)(7).  The Commission has wide latitude in identifying factors that it may deem

relevant to its exercise of discretion whether to cumulate.  The Commission identified numerous

differences in the conditions under which subject imports from Brazil would likely compete with

the other subject imports.  The distinctions on which the Commission relied – which involve

factors such as trade restrictive measures, market presence, export orientation, and production –

are ones that the Commission's reviewing courts previously have concluded can justify an

exercise of discretion not to cumulate.

Contrary to Plaintiffs' argument, there was nothing circular about the Commission's

exercise of its discretion to not cumulate.  Indeed, in each of the very cases relied on by

Plaintiffs, this Court has rejected similar arguments and affirmed the Commission's exercise of

its discretion not to cumulate subject imports.  *See, e.g.*, *Nucor Corp. v. United States*, 33 CIT

157, 166-71, 605 F. Supp. 2d 1361, 1369-72 (2009); *Allegheny Ludlum Corp. v. United States*,

30 CIT 1995, 2002-05, 475 F. Supp. 2d 1370, 1378-81 (2006); *Neenah Foundry Co. v. United

States*, 25 CIT 702, 709-12, 155 F. Supp. 2d 766, 773-74 (2001).  Moreover, Plaintiffs have not

shown that the Commission's exercise of its discretion not to cumulate Brazil with the other

subject countries in these sunset reviews departed from any "past practice" of the agency,

especially since almost all of the prior Commission decisions cited by Plaintiffs did not even

involve cumulation let alone absolute quotas such as those involved here.

Plaintiffs' remaining arguments avoid the correct standard of review by impermissibly

2

seeking to reweigh the evidence.  Since the Commission's findings were supported by substantial evidence and in accordance with law, this Court should affirm the Commission's negative determinations for Brazil.

## II.    STATEMENT OF FACTS

### A.    Procedural Background

*The Original Investigations*.  On July 28, 2015, Nucor Corporation ("Nucor"), Steel Dynamics Inc. ("SDI"), United States Steel Corporation ("U.S. Steel"), AK Steel Corporation ("AK Steel"), and ArcelorMittal USA LLC ("AMUSA") filed antidumping duty petitions regarding imports of CRS from Brazil, China, India, Japan, South Korea, Netherlands, Russia, and the United Kingdom and countervailing duty petitions regarding imports of CRS from Brazil, China, India, South Korea, and Russia.  In July 2016, the Commission determined that a domestic industry was materially injured by reason of imports of CRS from China and Japan found by Commerce to be sold at less-than-fair-value ("LTFV" or "dumped") and imports of CRS from China found by Commerce to be subsidized.[3]  On July 14, 2016, Commerce published the antidumping duty orders on imports of CRS from China and Japan and the countervailing duty order on CRS from China.[4]  The Commission determined in September 2016 that a domestic industry was materially injured by reason of LTFV imports of CRS from Brazil, India, South Korea, and the United Kingdom and by subsidized imports of CRS from Brazil and South

---

[3] *Cold-Rolled Steel Flat Products from China and Japan*, Inv. Nos. 701-TA-541 and 731-TA-1284 and 1286 (Final), USITC Pub. 4619 (July 2016) ("*Original Determinations*, USITC Pub. 4619").

[4] *Certain Cold-Rolled Steel Flat Products from Japan and the People's Republic of China: Antidumping Duty Orders*, 81 Fed. Reg. 45,956 (Dep't of Commerce) (July 14, 2016); *Certain Cold-Rolled Steel Flat Products from the People's Republic of China:  Countervailing Duty Order*, 81 Fed. Reg. 45,960 (Dep't of Commerce) (July 14, 2016).

Korea, and was threatened with material injury by reason of subsidized imports of CRS from India.[5]  On September 20, 2016, Commerce published the antidumping duty orders on imports of CRS from Brazil, India, South Korea, and the United Kingdom and the countervailing duty orders on CRS from Brazil, India, and South Korea.[6]

*Five-Year Reviews*.  On June 1, 2021, the Commission instituted five-year reviews pursuant to 19 U.S.C. § 1675(c), to determine whether revocation of the antidumping and/or countervailing duty orders on CRS from Brazil, China, India, Japan, South Korea, and the United Kingdom would likely lead to the continuation or recurrence of material injury.  In August of 2022, the Commission determined that revocation of the orders on CRS from China, India, Japan, South Korea, and the United Kingdom would be likely to lead to continuation or recurrence of material injury to an industry in the United States within a reasonably foreseeable time.  Views at 3-93.  The Commission determined that revocation of the orders on CRS from Brazil would not be likely to lead to continuation or recurrence of material injury to an industry in the United States within a reasonably foreseeable time.  *Id*. at 93-101.[7]  In accordance with

---

[5] *Cold-Rolled Steel Flat Products from Brazil, India, Korea, Russia, and the United Kingdom*, Inv. Nos. 701-TA-540, 542-544 and 731-TA-1283, 1285, 1287 and 1289-1290 (Final), USITC Pub. 4637 (Sept. 2016) ("*Original Determinations*, USITC Pub. 4637").

[6] *Certain Cold-Rolled Steel Flat Products from Brazil, India, the Republic of Korea, and the United Kingdom:  Amended Final Affirmative Antidumping Determinations for Brazil and the United Kingdom and Antidumping Duty Orders*, 81 Fed. Reg. 64,432 (Dep't of Commerce) (Sept. 20, 2016); *Certain Cold-Rolled Steel Flat Products from Brazil, India, and the Republic of Korea:  Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order (the Republic of Korea) and Countervailing Duty Orders (Brazil and India)*, 81 Fed. Reg. 64,436 (Dep't of Commerce) (Sept. 20, 2016).

[7] Commissioners Rhonda K. Schmidtlein and Randolph J. Stayin dissented.  Commissioners Schmidtlein and Stayin determined that revocation of the countervailing duty orders on CRS from Brazil, China, India, and South Korea and the antidumping duty orders on CRS from Brazil, China, India, Japan, South Korea, and the United Kingdom would be likely to lead to continuation or recurrence of material injury to an industry in the United States within a

those findings, Commerce published notice of revocation of the orders with respect to Brazil; the orders with respect to China, India, Japan, South Korea, and the United Kingdom remain in place.  87 Fed. Reg. 52,360.

### B.      Summary of Commission Views

This appeal arises from the first five-year reviews of the antidumping and countervailing duty orders on CRS from six subject countries:  Brazil, China, India, Japan, South Korea, and the United Kingdom.  The Commission exercised its discretion not to cumulate subject imports from Brazil with the other five subject countries because it found that different conditions of competition were likely to prevail for subject imports from Brazil compared to subject imports from all other subject sources.  Specifically, the Commission found that, while several of the subject countries were subject to quota exemptions from the additional tariffs imposed under Section 232 of the Trade Expansion Act of 1962, as amended,[8] the Section 232 absolute quota for Brazil was different in significant respects from the trade restrictive measures covering the other five subject countries.  Views at 58-61, 63.  As a result of these differences, the Commission found that subject imports from Brazil were not likely to be able to compete in the U.S. market for much larger sales volumes as imports from all other subject sources.  *Id*.  Even more specifically, the Commission addressed the differences between imports from Brazil and those from the one other country – South Korea – also subject to an absolute quota limit.  In this regard, the Commission noted that there were differences in likely conditions of competition

---

reasonably foreseeable time.  *See* Separate and Dissenting Views of Commissioners Schmidtlein and Stayin, at 1-7 (CR251).

[8]  19 U.S.C. § 1862.  *See* Staff Report, at I-33–39 (CR240), detailing imposition of Section 232 duties on steel imports, including CRS.

between the CRS industries in Brazil and South Korea in terms of their presence in the U.S. market, their export-orientation, and their production capabilities.  *Id*. at 59-63.

After exercising its discretion not to cumulate subject imports from Brazil with subject imports from the other five subject countries, the Commission turned to its likely injury analysis for Brazil.  The Commission determined that revocation of the orders on subject imports from Brazil would not be likely to lead to the continuation or recurrence of material injury to the domestic industry in the reasonably foreseeable future.  The Commission found that:  (i) subject imports from Brazil were not likely to enter the United States in significant volumes within a reasonably foreseeable time if the orders were revoked; (ii) revocation of the orders likely would not lead to significant underselling by subject imports from Brazil, or to significant price depression or suppression, within a reasonably foreseeable time; and (iii) revocation of the orders on Brazil was not likely to have a significant impact on the domestic industry.  *Id*. at 93-101.

On appeal, Plaintiffs challenge only the Commission's exercise of its discretion not to cumulate subject imports from Brazil.  Plaintiffs do not challenge any aspect of the Commission's negative determination for Brazil on an individual-country basis, including its likely volume, likely price effects, and likely impact findings for Brazil only.  Accordingly, this brief focuses on the issues pertaining to the Commission's discretionary cumulation analysis for Brazil that Plaintiffs are contesting.

## III.    STANDARD OF REVIEW

As an overarching matter, Plaintiffs' attacks upon the Commission's determinations depend upon an improper application of the applicable standard of review.  That is, Plaintiffs essentially ask this Court to serve as a "sixth Commissioner" and overrule the reasonable factual findings made, and methodology employed, by the Commission.  For example, Plaintiffs repeatedly refer to the Commission's determination as the "majority" determination, and Plaintiffs cite to their preferred findings of the dissenting Commissioners.  The fact, however, is that, by statute, the views of the Commission majority – here the affirmative material injury determination – constitutes the determination of the Commission.  *See, e.g.*, *Siemens Energy, Inc. v. United States,* 806 F. 3d 1367, 1368 (Fed. Cir. 2015).  It is that determination that is to be reviewed by this Court for reasonableness and lawfulness.  In doing so, however, it is not the role of the Court to weigh the Commission's determination against the dissenting views and choose the conclusion that it might prefer.  That the dissenting Commissioners, or this Court, or Plaintiffs, may have weighed the evidence differently, does not provide grounds to overrule the Commission's determination.  Indeed, "{a}lthough individual Commissioners reach{} divergent conclusions, '{t}he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding{s} from being supported by substantial evidence.'"  *Id.* at 1372 (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)); *see also Grupo Indus. Camesa v. United States*, 85 F.3d 1577, 1582 (Fed. Cir. 1996) ("Although {a party} points to evidence supporting the dissenting commissioners' decision that the domestic industry was not materially injured, this does not mean that the Commission's affirmative determination is unsupported by substantial evidence.") (citing *Consolo*, 383 U.S. at 619-20).

7

Throughout its brief, Plaintiffs overlook that, under the substantial evidence standard, a Court may not, "even as to matters not requiring expertise ... displace the {agency's} choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *accord Grupo Indus. Camesa*, 85 F.3d at 1582.[9]  Despite Plaintiffs' efforts, the Court "may not reweigh the evidence or substitute its own judgment for that of the agency." *Usinor v. United States*, 28 CIT 1107, 1111, 342 F. Supp. 2d 1267, 1272 (2004); *Coal. of Gulf Shrimp Indus. v. United States*, 71 F. Supp. 3d 1356, 1361 (Ct. Int'l Trade 2015) (quoting *Usinor*, 28 CIT at 1111, 342 F. Supp. 2d at 1272).

Moreover, "{i}t is the Commission's task to evaluate the evidence it collects during its investigation" and "{c}ertain decisions, such as the weight to be assigned a particular piece of evidence, lie at the core of that evaluative process." *U.S. Steel Grp. v. United States*, 96 F.3d 1352, 1357 (Fed. Cir. 1996); *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350 (Fed. Cir. 2006) (quoting *U.S. Steel Grp.*, 96 F.3d at 1357).  In its role as trier of fact in injury investigations, "the Commission 'has the discretion to make reasonable interpretations of the evidence and to determine the overall significance of any particular factor in its analysis.'" *Nevinnomysskiy Azot v. United States*, 32 CIT 642, 653, 565 F. Supp. 2d 1357, 1367-68 (2008) (quoting *Goss Graphics Sys., Inc. v. United States*, 22 CIT 983, 1004, 33 F. Supp. 2d 1082, 1100 (1998), *aff'd*, 216 F.3d 1357 (Fed. Cir. 2000)).  As the Federal Circuit has stated, if "the totality of the evidence does not illuminate a black-and-white answer to a disputed issue, it is the role of

---

[9] Even if one or more subsidiary findings of the Commission are unsupported by substantial evidence, the Court must still assess whether the remaining evidence cited by the Commission provides substantial evidence for the Commission's determinations. *See U.S. Steel Grp. v. United States*, 96 F.3d 1352, 1357 (Fed. Cir. 1996).

the expert factfinder – here the majority of the Presidentially-appointed, Senate-approved Commissioners – to decide which side's evidence to believe." *Nippon Steel*, 458 F.3d at 1359. "Congress has allocated to the Commission the task of making these complex determinations," the Federal Circuit has explained, and "{o}urs is only to review those decisions for reasonableness." *U.S. Steel Grp.*, 96 F.3d at 1357.

Notwithstanding these established principles, Plaintiffs ignore the record support for the Commission's actual factual findings or overlook the agency's reasons for making these findings. At most, Plaintiffs point to evidence – invariably considered and rejected by the ITC in its opinion – that could have supported a factual finding contrary to the one the agency made. In the end, it is neither "surprising nor persuasive" that Plaintiffs can point to evidence "which detracts from the evidence which supports the Commission's decision" or can "hypothesize a reasonable basis for a contrary determination." *Matsushita Elec. Indus., Ltd. v. United States*, 750 F.2d 927, 936 (Fed. Cir. 1984).

## IV.   ARGUMENT

### A.   The Commission Reasonably Declined to Cumulate All Subject Imports

#### 1.   Cumulation Is Discretionary in Five-Year Reviews

##### a.   Relevant Statutory Provision

As Plaintiffs acknowledge, the statute is explicit that cumulation in five-year reviews is discretionary. Thus, the statute states that:

> the Commission *may* cumulatively assess the volume and effect of imports of the subject merchandise from all countries with respect to which reviews under section 1675(b) or (c) of this title were initiated on the same day, if such imports would be likely to compete with each other and with domestic like products in the United States market. The Commission shall not cumulatively assess the volume and effects of imports of the subject merchandise in a case in which it determines that such imports are likely to have no discernible

adverse impact on the domestic industry.

19 U.S.C. § 1675a(a)(7) (emphasis added).[10]  The Statement of Administrative Action ("SAA")

to the Uruguay Round Agreements Act emphasizes that, by use of the word "may," "section

752(a)(7) grants the Commission *the discretion* to engage in a cumulative analysis."  H.R. Rep.

103-316, vol. I at 887 (1994) (emphasis added).  By contrast, in instances where Congress

wanted to mandate cumulation where certain conditions were met, it said so explicitly, such as in

requiring in present material injury analyses in original investigations that "the Commission shall

cumulatively assess the volume and effect of imports of the subject merchandise."  19 U.S.C.

§ 1677(7)(G)(i).[11]

Neither the statute nor the legislative history provides any guidance on the factors the

Commission may consider in exercising its discretion in five-year reviews whether to cumulate

subject imports.  *See Neenah*, 25 CIT at 709, 155 F. Supp. 2d at 772.  Consequently, the

Commission's reviewing courts have given the Commission "wide latitude" in identifying the

relevant factors for discretionary cumulation in sunset reviews.  *Allegheny Ludlum,* 30 CIT at

2002-05, 475 F. Supp. 2d at 1378-80 ("{D}iscretionary cumulation does not preclude the

---

[10] As Plaintiffs note (Pl. Br. at 20), in these reviews, the Commission did not find that any of the subject countries were precluded from cumulation because they are likely to have no discernible adverse impact on the domestic industry.  *See* Views at 26-50.  The second sentence of the above-quoted statutory provision therefore is not at issue in this appeal.

[11] Similar to the forward-looking analysis in sunset reviews, the statutory provision governing cumulation for threat analysis in original investigations likewise states that "the Commission *may* cumulatively assess the volume and price effects of imports" under certain circumstances. 19 U.S.C. § 1677(7)(H) (emphasis added).  Cumulation is discretionary for forward-looking analyses such as five-year reviews and threat determinations for practical reasons, vis, because combining trends for different subject countries on a prospective basis has proved difficult.  *See, e.g.*, *Cogne Acciai Speciali S.P.A. v. United States*, 29 CIT 1168, 1185 (2005) (acknowledging "the {ITC's} difficult task of predicting what would be likely to happen in the event of revocation of the antidumping duty orders); *accord Ad Hoc Comm. of Domestic Uranium Producers v. United States*, 25 CIT 1010, 1014, 162 F. Supp. 2d 649, 654 (2001).

Commission from considering any factors it considers relevant."). And, consistent with the plain language of the statute and legislative history, both the Federal Circuit and this Court have held that the Commission ultimately retains statutory discretion in sunset reviews not to cumulate subject imports from all countries even if both the threshold requirements for cumulation of discernible adverse impact and likely reasonable overlap in competition are satisfied. *See, e.g.*, *Nucor Corp. v. United States*, 601 F.3d 1291, 1293 (Fed. Cir. 2010) ("Even if the subject imports meet the statutory elements of cumulation, the ITC has discretion not to cumulate them in a sunset review."); *Allegheny Ludlum*, 30 CIT at 2002-03, 475 F. Supp. 2d at 1378 ("{C}umulation, pursuant to the statute, is discretionary once the threshold requirements of § 1675a(a)(7) have been met.").

> **b.    Plaintiffs Seek to Impose a Requirement for Cumulation in Certain Sunset Reviews**

Examination of likely similarities and distinctions in conditions of competition has for many years been a regular part of the Commission's analysis in five-year reviews of whether or not to exercise its discretion to cumulate subject imports. *See Nucor*, 601 F.3d at 1296; *Allegheny Ludlum*, 30 CIT at 2004-05, 475 F. Supp. 2d at 1380. Indeed, both the Federal Circuit and this Court have confirmed that the Commission may consider likely differing conditions of competition among subject imports from different subject countries in exercising its discretion not to cumulate all subject imports in sunset reviews. *See, e.g.*, *Nucor*, 601 F.3d at 1295-96; *U.S. Steel Corp. v. United States*, 36 CIT 1172, 1174-78, 856 F. Supp. 2d 1318, 1322-24 (2012); *Nucor*, 33 CIT at 167-68, 605 F. Supp. 2d at 1370; *Nucor Corp. v. United States*, 32 CIT 1380, 1407-15, 594 F. Supp. 2d 1320, 1350-56 (2008); *U.S. Steel Corp. v. United States*, 32 CIT 832, 572 F. Supp. 2d 1334 (2008); *Allegheny Ludlum*, 30 CIT at 1998-2006, 475 F. Supp. 2d at 1375-

1381; *Domestic Uranium Producers*, 25 CIT at 1014, 162 F. Supp. 2d at 654; *Neenah*, 25 CIT at

709-12, 155 F. Supp. 2d at 772-74.

      While Plaintiffs pay lip service to the discretionary nature of cumulation in sunset

reviews, their arguments suggest otherwise.  Consequently, the statute and case law provide the

Commission far more discretion in determining whether to cumulate subject imports in a five-

year review than Plaintiffs contend.  Plaintiffs intimate that the Commission must cumulate

subject imports in a five-year review unless it finds no likely reasonable overlap of competition

or unless it finds that revocation of an order will have no likely discernible adverse impact.

*See* Pl. Br. at 22-23.  In these instances, however, the statute outright precludes the ITC from

cumulating subject imports.  *See* 19 U.S.C. § 1675a(a)(7).  The statutory grant of discretion

would be meaningless if the Commission could decline to cumulate subject imports in sunset

reviews only in those circumstances where the statute did not permit cumulation under any

circumstances.  Notably, this Court previously has rejected a similar argument explaining that, if

such an argument were true,

> then the Commission could never determine not to cumulate when
> the two requirements are met. Such a reading of the statute is
> untenable as it would be contrary to the plain language of the
> cumulation provision and would destroy any actual discretion of the
> Commission.

*Nucor Corp. v. United States*, 32 CIT 751, 758, 569 F. Supp. 2d 1328, 1338 (2008)  By the same

token, although the ability to cumulate enables the Commission to address any likely

"hammering effect" of unfairly traded imports on the industry as part of its analysis, *see Neenah*,

25 CIT at 708-09, 155 F. Supp. 2d at 772, the "hammering effect" principle referenced by

Plaintiffs (Pl. Br. at 21-22) neither mandates that the Commission cumulate all imports subject to

review nor negates the discretionary nature of cumulation in five-year reviews consistent with

the plain language of the statute, legislative history, and caselaw discussed above.

**B.**   **The Commission's Decision Not to Cumulate Subject Imports from Brazil with Subject Imports from China, India, Japan, South Korea, and the United Kingdom Was Supported by Substantial Evidence and in Accordance with Law**

**1.**   **Substantial Evidence Supports the Commission's Findings Underlying Its Determination Not to Cumulate the Imports from Brazil with the Imports from the Other Subject Countries**

The Commission found several meaningful differences in likely conditions of competition between subject imports from Brazil, on the one hand, and subject imports from China, India, Japan, South Korea, and the United Kingdom on the other. In light of these likely differences, its decision not to exercise its discretion to cumulate subject imports from Brazil with subject imports from the other five subject countries was reasonable.

One of the differences in likely conditions of competition stemmed from the fact that subject imports from Brazil had an absolute quota which distinguished it from the other subject countries. That subject imports from Brazil had a hard cap on annual volume under the Section 232 absolute quota but subject imports from China, India, Japan, and the United Kingdom had no hard cap at all meant that the Brazilian CRS industry had a restraining factor for likely volume that these other four subject countries did not have, thereby rendering Brazil unlikely to be able compete with them for much larger sales volumes. Views at 58-59, 61. As the Commission found, the Section 232 absolute quota on Brazil acted as an "absolute cap" on the annual volume of subject imports from Brazil. *Id*. at 59. By contrast, four of the other five subject countries (China, India, Japan, and the United Kingdom) did not have an absolute quota. *Id*. That is, subject imports from China and India were subject to 25 percent *ad valorem* tariffs without any quota limits. *Id*. at 59 & n.301. As the Commission also found, subject imports from Japan and the United Kingdom had tariff rate quotas ("TRQs"), but these TRQs were not a hard cap on

13

volume like the absolute quota for Brazil; instead, the TRQs for Japan and the United Kingdom permitted "unlimited volumes of subject imports from each of these subject countries to enter the United States with 25 percent section 232 duty rates applied for any volumes in excess of the TRQ limits." *Id*. at 59 & nn.302-03. Given these differences in likely conditions of competition, the Commission found that subject imports from Brazil were not likely to be able to compete in the same manner in the U.S. market for much larger sales volumes as subject imports from China, India, Japan, and the United Kingdom. *Id*. at 58-59, 61.

The Commission also considered whether subject imports from Brazil and South Korea, the fifth and sole remaining subject country, were likely to compete under similar conditions of competition. The Commission recognized that subject imports from Brazil and South Korea were both subject to Section 232 absolute quotas. *Id*. at 59. The Commission explained, however, that the absolute quota on subject imports from South Korea was "almost three times larger than the absolute quota for subject imports from Brazil." *Id.* at 60. Further, the annual absolute quota on subject imports from South Korea was 141,018 short tons (equivalent to 0.5 percent of apparent U.S. consumption in 2021), whereas the annual absolute quota on subject imports from Brazil was only 57,251 short tons (equivalent to 0.2 percent of apparent U.S. consumption in 2021). *Id*.

In addition to differences in their absolute quota limits, the Commission explained that subject imports from Brazil and South Korea had disparities in terms of their presence in the U.S. market since the imposition of the orders. While subject imports from South Korea "approached their quota limit" and "maintained a substantial presence in the U.S. market throughout the POR {period of review}," subject imports from Brazil "remained well below their much smaller quota

**BUSINESS PROPRIETARY INFORMATION**
**SUBJECT TO PROTECTIVE ORDER REDACTED**

limit and were virtually absent from the U.S. market during the POR." *Id*. at 60 & nn.305, 306.[12]

Additionally, the Commission cited differences in export-orientation between the CRS in industries in Brazil and South Korea. *Id*. at 60 n.307. The Commission reasonably found that the Brazilian industry was less export-oriented than the South Korean industry. *Id*. As the Commission found, the publicly available Global Trade Atlas ("GTA") data indicated that South Korea was the second-largest exporter of CRS in 2021 and that the South Korean's CRS exports in 2021, at 6.6 million short tons, were much larger than the Brazilian industry's CRS exports, at 229,193 short tons. *Id*. Although the foreign producer questionnaire coverage for South Korea was more limited than for Brazil, even the limited data that were reported for South Korea reflected a larger volume of exports from South Korea. The South Korean industry's reported exports of CRS ranged from [      ] short tons to [      ] short tons during the POR while the Brazilian industry's more complete reported exports of CRS ranged only from [      ] short tons to [      ] short tons. *Id*. Based on this comparison, the Commission reasonably found that the questionnaire data corroborated the GTA data showing that the Brazilian CRS

---

[12] As the Commission found, the volume of subject imports from South Korea were [      ] short tons in 2016, [      ] short tons in 2017, [      ] short tons in 2018, [      ] short tons in 2019, [      ] short tons in 2020, and [      ] short tons in 2021. Views at 60 n.305. As the Commission also found, information available suggests that the quota for South Korea was mostly filled in 2021. *Id*. More specifically, the Commission found that South Korea's annual quota usage rates for HTS statistical reporting numbers containing CRS products were the following in 2021: HTS 9903.80.08 (94 percent of 90,336,230 kg filled), HTS 9903.80.09 (83 percent of 3,207,110 kg filled), HTS 9903.80.10 (94 percent of 34,385,821 kg filled). *Id*. By comparison, the Commission found that the volume of subject imports from Brazil ranged from a low of 107 short tons in 2018 to a high of 8,775 short tons in 2019, and it was 778 short tons in 2021. *Id*. at 60 n.306. As the Commission also found, the record information suggested that, unlike South Korea, the Section 232 absolute quota for Brazil was mostly not filled in 2021. Brazil's annual quota usage rates for HTS statistical reporting numbers containing CRS products were the following in 2021: HTS 9903.80.08 (1 percent of 51,717,234 kg filled), HTS 9903.80.09 (75 percent of 32,839 kg filled), HTS 9903.80.10 (0 percent of 0 kg filled). *Id*. at 59 n.300.

**BUSINESS PROPRIETARY INFORMATION**
*SUBJECT TO PROTECTIVE ORDER REDACTED*

industry was less export-oriented that the South Korean industry during the POR.

Finally, the Commission cited differences in production between the CRS industries in Brazil and South Korea.  As the Commission found, the available record information indicated that the Brazilian industry has substantially less production than the South Korean industry during the POR.  *Id*. at 60-61 n.307.  The Brazilian industry's production of cold-rolled steel during the 2018-2020 period ranged between [          ] short tons and [          ] short tons, whereas the South Korean industry's production of cold-rolled steel during this period was much higher, ranging between [          ] and [          ] short tons.  *Id*. at 61 n.307.

Given these myriad significant differences, including quota limits, differing degrees of presence in the U.S. market, lack of Brazilian export-orientation, and less Brazilian production capabilities, the Commission found that subject imports from Brazil were not likely to be able to compete in the same manner in the U.S. market for much larger sales volumes as were subject imports from South Korea.  *Id*. at 60-61.

All of these factual findings – none of which are challenged *per se* by Plaintiffs – provide substantial evidence for the Commission's exercise of its discretion not to cumulate subject imports from Brazil with each of the other five subject countries.  *See, e.g.*, *Nippon Steel*, 458 F.3d at 1359.

> ### 2.   The Commission's Reliance on the Differences in Conditions of Competition to Decline to Cumulate in a Sunset Review Has Been Upheld by the Reviewing Courts

Plaintiffs do not dispute that the Commission's reviewing courts have endorsed the Commission's reliance on differences in likely conditions of competition in exercising its discretion not to cumulate in sunset reviews.  Indeed, both the Federal Circuit and this Court have affirmed the Commission in prior sunset reviews where the Commission relied on factors

like those it relied upon here in exercising its discretion not to cumulate subject imports from

Brazil, including differences in trade restrictive measures, market presence, export-orientation,

and production.  *See, e.g., Nucor*, 601 F.3d at 1294, 1296-97 (differences in market presence

and export-orientation); *U.S. Steel*, 36 CIT at 1174-78, 856 F. Supp. 2d at 1322-24

(differences in market presence and export-orientation); *Nucor*, 32 CIT at 1412-14, 594 F.

Supp. 2d at 1354-55 (differences in market presence, export-orientation, and production),

*aff'd*, 601 F.3d at 1294-97; *U.S. Steel Corp.*, 32 CIT at 835-36, 572 F. Supp. 2d at 1341

(differences in market presence, production capabilities, and capacity utilization); *Nucor*, 32

CIT at 763-65, 569 F. Supp. 2d at 1342 (differences in tariff barriers); *Allegheny Ludlum*, 30

CIT at 2002-05, 475 F. Supp. 2d at 1378-81 (differences in market presence and production

capacity); *Domestic Uranium Producers*, 25 CIT at 1013-14, 162 F. Supp. 2d at 653-54

(differences in trade restricting measures, market presence, and production capacity); *Neenah*,

25 CIT at 709-12, 155 F. Supp. 2d at 773-74 (differences in market presence).

> **C.      Plaintiffs Have Failed to Show that the Commission Erred in Exercising Its
> Discretion Not to Cumulate Subject Imports from Brazil**

>> **1.      Plaintiffs' Circularity Argument Does Not Withstand Scrutiny and
>> Has Been Previously Rejected by this Court**

>>> **a.      Plaintiffs' Circularity Argument Ignores the Commission's
>>> Actual Factual Findings and Analysis**

Plaintiffs argue, incorrectly, that the Commission required proof of likely injury as a

prerequisite for cumulation for Brazil.  *See* Pl. Br. at 22-24.  Plaintiffs ignore that it was only

*after* exercising its discretion not to cumulate Brazil based on differences in likely conditions of

competition that the Commission performed a comprehensive likely injury analysis for Brazil

and ultimately reached a negative injury determination.  Views at 93-101.  Similarly, Plaintiffs

overlook that *before* analyzing whether the likely conditions of competition supported

cumulation, the Commission performed the separate statutorily contemplated analysis in which it first determined that revocation of the orders on Brazil would not likely have no discernible adverse impact on the U.S. industry.  *Id*. at 26-31.

Turning to the next step of its analysis, the Commission properly considered whether to exercise its discretion to cumulate based on an examination of likely conditions of competition. Contrary to Plaintiffs' contentions (Pl. Br. at 25-27), the Commission did not rely only on absolute small volumes for Brazil or on the low quota for imports from Brazil in exercising its discretion not to cumulate Brazil with China, India, Japan, and the United Kingdom.  Instead, the Commission found that the Section 232 absolute quota for Brazil was different from the trade restrictive measures for China, India, Japan, and the United Kingdom.  As the Commission found, the Section 232 absolute quota on Brazil acted as an "absolute cap" on the annual volume of subject imports from Brazil.  Views at 59.  By contrast, as discussed above, China, India, Japan, and the United Kingdom did not have an absolute quota.  *Id*.  Subject imports from China and India were subject to 25 percent *ad valorem* tariffs without any quota limits.  *Id*. at 59 & n.301.  Subject imports from Japan and the United Kingdom had tariff rate quotas ("TRQs"), but these TRQs were not a hard cap on volume like the absolute quota for Brazil; instead, the TRQs for Japan and the United Kingdom permitted "unlimited volumes of subject imports from each of these subject countries to enter the United States with 25 percent section 232 duty rates applied for any volumes in excess of the TRQ limits."  *Id*. a 59 & nn.302, 303.  In short, the Section 232 absolute quota for Brazil meant that the Brazilian industry had a factor restraining likely subject import volumes – a hard cap on annual volumes – that the industries in China, India, Japan, and the United Kingdom did not have.

Equally unavailing is Plaintiffs' argument that the Commission relied almost exclusively

on absolute small volumes in exercising its discretion not to cumulate subject imports from

Brazil and South Korea. *See* Pl. Br. at 27-31.[13]  As discussed above, the Commission found that

there were differences in the trade restrictive measures for Brazil and South Korea.  Views at 59-

60.  The Commission explained that the absolute quota on subject imports from South Korea was

almost three times larger than the absolute quota for subject imports from Brazil. *Id.* at 60.  In

addition, the Commission discussed disparities in terms of the presence of the respective subject

imports from Brazil and South Korea in the U.S. market since the imposition of the orders, with

subject imports from South Korea maintaining a substantial presence in the U.S. market

throughout the POR while subject imports from Brazil remaining virtually absent from the U.S.

market during the POR. *Id*. at 60 & nn.305, 306.  Moreover, the Commission cited differences

in export-orientation and production between the CRS industries in Brazil and South Korea, with

information available indicating that the Brazilian industry was less export-oriented and had less

production than the South Korean industry. *Id*. at 60-61 n.307.  Given these numerous

differences in likely conditions of competition, the Commission found that subject imports from

Brazil were not likely to be able to compete in the same manner in the U.S. market for much

larger sales volumes as subject imports from South Korea. *Id*. at 61.  Especially since the

---

[13] By arguing that the Commission relied "almost exclusively" on small volumes in deciding not to cumulate Brazil and South Korea, Plaintiffs appear to concede that the Commission relied on a combination of factors rather than only small volumes for deciding not to cumulate Brazil and South Korea.  Pl. Br. at 3, 29.  Plaintiffs' complaint that the Commission discussed some of these factors in a footnote rather than the text (*id.* at 29) misses the point that the analysis in the footnote also provides substantial evidence for the Commission's exercise of its discretion not to cumulate Brazil and South Korea. *See, e.g.*, *Am. Bearing Mfrs. Ass'n v. United States*, 28 CIT 1698, 1702-03, 350 F. Supp. 2d 1100, 1106-07 (2004) (rejecting plaintiff's argument that the Commission's determination was unsupported by substantial evidence because the Commission had "relegated its discussion of volume by unit-quantity to a footnote" and concluding "the fact that references to quantity data appeared in footnotes does not detract from their discussion by the ITC.") (quotations omitted).

Commission relied on a combination of factors for exercising its discretion not to cumulate Brazil and South Korea, Plaintiff's argument that the Commission relied on small absolute volumes alone should be rejected, much like this Court rejected a similar argument in *Allegheny Ludlum*. 30 CIT at 2003-04, 475 F. Supp. 2d at 1379.

In the end, Plaintiffs' circularity argument amounts to another attempt to reweigh the evidence. *See* Pl. Br. at 29-31. As discussed above, the Commission relied upon a combination of factors in exercising its discretion not to cumulate subject imports from Brazil and South Korea. In addition to differences in quota limits and market presence, the Commission cited differences in export-orientation and production between the Brazilian and South Korean CRS industries in exercising its discretion not to cumulate Brazil and South Korea. Views at 59-61. As the courts have consistently found, where, as here, substantial evidence supports the Commission's determination that determination must be upheld, even if the court might have weighed the evidence differently. *See, e.g.*, *Altx, Inc. v. United States*, 25 CIT 1100, 1104, 167 F. Supp. 2d 1353, 1361 n.9 (2001); *Nucor Corp. v. United States*, 28 CIT 188, 232, 318 F. Supp. 2d 1207, 1246 (2004). Regardless of whether the Brazilian and South Korean industries both exported and produced more than their Section 232 quota limits (Pl. Br. at 29-30),[14] Plaintiffs

---

[14] Plaintiffs argue that the fact that Brazil was less export-oriented and had less production than South Korea "is a distinction without a difference" since the exports and production for both Brazil and South Korea exceeded their respective Section 232 quota limits. Pl. Br. at 30-31. Plaintiffs overlook that the Commission found that, unlike subject imports from South Korea which approached their quota limit during the POR, subject imports from Brazil remained well below their quota limit during the POR. Views at 60. Plaintiffs ignore that the Commission also found that the information available indicated that the quota for Brazil was mostly not filled in 2021 whereas the quota for South Korea was mostly filled in 2021. *Id*. at 59-60 nn.300 & 305. The Commission's findings that Brazil was less export-oriented and had less production than South Korea are not irrelevant as Plaintiffs mistakenly contend since these findings provided further indication that subject imports from Brazil were likely to continue having a smaller presence in the U.S. market well below their quota limits unlike subject imports from South Korea.

have not argued much less shown that the Commission's findings that the Brazilian industry was less export-oriented and had less production than the South Korean industry were not supported by substantial evidence.  This Court should reject Plaintiffs' misguided invitation to reweigh the evidence.

> **b.**    **Plaintiffs Rely on Cases that Upheld the Commission's Analysis and Support the Commission's Exercise of Discretion Not to Cumulate Imports from Brazil in this Case**

In support of its argument that the Commission engaged in an impermissibly circular analysis in exercising its discretion not to cumulate Brazil, Plaintiffs rely on this Court's prior decisions in *Neenah*, *Nucor*, and *Allegheny Ludlum*.  Pl. Br. at 22-31.  Plaintiffs' reliance on these cases is especially misplaced since, in all three instances, this Court affirmed the Commission's exercise of its discretion not to cumulate subject imports from some countries with others in sunset reviews.  *Nucor*, 33 CIT at 166-69, 605 F. Supp. 2d at 1369-71; *Allegheny Ludlum*, 30 CIT at 2002-06, 475 F. Supp. 2d at 1378-81; *Neenah*, 25 CIT 709-711, 155 F. Supp. 2d at 773-74.

As discussed above, Plaintiffs argue, incorrectly, that the Commission committed "legal error" by relying "solely" on absolute small volumes in exercising its discretion not to cumulate Brazil with the other five subject countries.  *See* Pl. Br. at 3, 23.  This Court rejected a similar argument in *Allegheny Ludlum* in affirming the Commission's exercise of its discretion not to cumulate subject imports from all the subject countries in sunset reviews concerning stainless steel sheet and strip ("SSSS").  30 CIT at 1999-2007, 475 F. Supp. 2d at 1376-82.  In rejecting plaintiff's argument that the Commission's discretionary cumulation analysis was unlawfully circular, this Court in *Allegheny Ludlum* emphasized that the Commission's decision not to cumulate U.K. subject imports "was not based solely upon the absolute volume of subject

imports" from the United Kingdom, but also upon evidence that U.K. subject imports declined each year during the review, that subject imports from the U.K. were concentrated in a niche, specialty product (*i.e.*, precision strip), and that the sole U.K. producer of SSSS (Outokumpu) did not add to its production capacity during the review period. *Id.* at 2003, 475 F. Supp. 2d. at 1379.

Plaintiffs' reliance on this Court's decision in *Nucor* is equally unpersuasive. In *Nucor*, this Court affirmed the Commission's exercise of its discretion not to cumulate subject imports from Kazakhstan, Romania, and South Africa with subject imports from China, India, Indonesia, Taiwan, Thailand, and Ukraine in sunset reviews concerning hot-rolled steel products. 33 CIT at 165-72, 605 F. Supp. 2d at 1369-72. In affirming the Commission's exercise of its discretion not to cumulate subject imports from Kazakhstan, Romania, and South Africa, the Court relied on differences in likely conditions of competition, including corporate affiliations with the largest domestic producer of hot-rolled steel products, Mittal USA. The principal difference stemmed from the fact that the Mittal USA relationship with affiliated producers in Kazakhstan, Romania, and South Africa ("the three *Mittal* countries") did not exist for producers in any of the other subject countries, thus resulting in differences in how the U.S. imports from these countries were likely to compete in the U.S. market with imports from the other subject countries. *Id*. at 168-72, 605 F. Supp. 2d at 1371-72. In *Nucor*, Mittal USA's control of both a significant domestic producer and essentially all production of subject merchandise in the three Mittal countries meant that the Kazakhstan, Romanian, and South African industries had a factor restraining likely subject import volumes – the desire not to injure a U.S. affiliate – that the industries in the other six subject countries did not have. *Id*. *Nucor* supports the Commission's analysis here, and in fact this Court affirmed the Commission's

exercise of discretion not to cumulate the three Mittal countries in that case. *Id.* at 165-72, 605 F. Supp. 2d at 1369-72.

In this vein, Plaintiffs reference a footnote in *Nucor* that actually supports the Commission's decision here. *See* Pl. Br. at 4, 23-25, 27 (citing footnote 12). In that footnote, the *Nucor* Court rejected the plaintiffs' arguments on circularity and found that the Commission's discretionary cumulation analysis was supported by substantial evidence. *Nucor*, 33 CIT at 168 n.12, 605 F. Supp. 2d at 1370 n.12. Moreover, in the same footnote, the *Nucor* Court also cited with approval this Court's prior decision in *Allegheny Ludlum* that affirmed the Commission for relying on myriad factors in exercising its discretion not to cumulate subject imports just like the Commission did here in exercising its discretion not to cumulate Brazil. *Id.* (citing *Allegheny Ludlum*, 30 CIT at 2002-04, 475 F. Supp. 2d at 1378-79).

Plaintiff's reliance on *Neenah* is similarly misplaced. In *Neenah*, this Court held that the Commission did not abuse its discretion by declining to cumulate subject imports from India with subject imports from Brazil, Canada, and China in sunset reviews for iron metal castings. 25 CIT at 711, 155 F. Supp. 2d at 774. Indeed, the *Neenah* Court did not find that any particular practice of the Commission was unlawful in declining to exercise its discretion to cumulate subject imports from India with the other three subject countries.

Much like the Plaintiffs here, the plaintiff in *Neenah* argued that the Commission "'conducted an unlawful circular analysis'" in exercising its discretion not to cumulate subject imports from India with subject imports from Brazil, Canada, and China in sunset reviews for iron metal castings. *Id.* at 703, 155 F. Supp. 2d at 767 (quoting Neenah brief). In the end, the *Neenah* Court affirmed the Commission's exercise of its discretion not to cumulate subject imports from India since the Commission had not "demanded demonstrated, independent

causation of material injury before any consideration of cumulation." *See Id*. at 709, 155 F. Supp. 2d at 772.  The reasoning behind the *Neenah* Court's rejection of the circularity argument raised in that case applies equally here.  As discussed above, Plaintiffs ignore that it was only *after* exercising its discretion not to cumulate Brazil based on differences in likely conditions of competition that the Commission performed a detailed likely injury analysis for Brazil and ultimately reached a negative injury determination.  Views at 93-101.  Accordingly, Plaintiffs' assertion that the Commission required proof of likely injury for Brazil as a prerequisite for cumulation should be rejected much like this Court rejected a similar argument by the plaintiff in *Neenah*.  25 CIT at 709-10, 155 F. Supp. 2d. at 772.

As Plaintiffs emphasize (Pl. Br. at 22), the *Neenah* Court observed that ITC cannot use a "circular" analysis by citing and relying only on the same factors that would underlie a negative injury determination (such as lack of significant import volume) as a reason for declining to cumulate.  *Neenah*, 25 CIT at 709-10, 155 F. Supp. 2d at 772-73.  This concern does not apply here, however.  In exercising its discretion not to cumulate Brazil with the other five subject countries, the Commission nowhere found that the likely volume of subject imports from Brazil was so low as to not be injurious.  Especially because the Commission relied upon the myriad factors discussed above rather than only small absolute volumes in exercising its discretion not to cumulate subject imports from Brazil, this case does not even implicate a "circular analysis" of the type referenced by this Court in *Neenah*.

Nonetheless, the Commission is not foreclosed from considering "likely volumes" of subject imports in exercising its discretion not to cumulate, as Plaintiffs appear to contend.  Pl. Br. at 3, 24, 27-28.  As discussed above, neither the statute nor the legislative history provides a specific list of factors the Commission may or must consider in exercising its discretion in five-

24

year reviews whether to cumulate subject imports.  *See Neenah*, 25 CIT at 709, 155 F. Supp. 2d

at 772.  Consequently, the Commission's reviewing courts have given the Commission "wide

latitude" in identifying the relevant factors for discretionary cumulation in sunset reviews.  *See,*

*e.g.*, *Allegheny Ludlum,* 30 CIT at 2002, 2005, 475 F. Supp. 2d at 1378, 1380 ("{D}iscretionary

cumulation does not preclude the Commission from considering any factors it considers

relevant.").

Plaintiffs ignore that the Commission in fact considered the likely volume of subject

imports in exercising its discretion not to cumulate and was affirmed by this Court in the very

cases upon which Plaintiffs rely here.  For example, in the discretionary cumulation analysis at

issue on appeal in *Neenah*, Commissioner Koplan (one of the Commissioners in the majority)

found that ". . . neither the volume nor the price of subject imports of heavy metal castings from

India are likely to significantly change if the counter-vailing duty order is revoked."  25 CIT at

706, 155 F. Supp. 2d at 769.  Commissioner Koplan also found that ". . . unlike subject imports

from India . . . removal of the existing orders covering subject merchandise from China, Brazil,

and Canada would result in substantial changes in the volume of subject imports from those

countries."  *Id*. at 707, 155 F. Supp. 2d at 770-71.  In *Neenah*, this Court specifically approved

Commissioner Koplan's "*comparative analysis* of current and *likely* {dumping} margins,

*volume*, and price effects" and therefore affirmed the Commission's exercise of its discretion not

to cumulate subject imports from India with subject imports from subject imports from Brazil,

Canada, and China.  *Id*. at 706, 155 F. Supp. 2d at 769 (emphasis added).

Similarly, in *Allegheny Ludlum*, this Court affirmed the Commission's exercise of its

discretion not to cumulate U.K. subject imports based on myriad factors, including comparing

likely volumes for the U.K. and other subject countries given " . . . the fact that {U.K.} import

volumes dropped [considerably, to a level much lower than] any other subject country during the years examined in the original investigation, and fell to less than [ ] short tons during the period of review."  30 CIT at 2000, 475 F. Supp. 2d at 1377 (citing Commission's confidential Views in underlying investigation, *available publicly as* USITC Pub. 3788, at 19-20 (July 2005)) (as bracketed in opinion).  Likewise, in *Nucor*, this Court affirmed the Commission's exercise of its discretion not to cumulate subject imports from Kazakhstan, Romania, and South Africa with subject imports from six other countries based on the Commission's finding that these three subject countries had a factor restraining likely subject import volumes – the desire not to injure a U.S. affiliate – that the industries in the other six subject countries did not have. *Nucor*, 33 CIT at 168-72, 605 F. Supp. 2d at 1371-72.  Accordingly, Plaintiffs' contention that the Commission cannot consider likely volumes in its discretionary cumulation analysis is belied by the very case law upon which they rely.

In short, there is no merit to Plaintiffs' argument that the Commission's discretionary cumulation analysis was unlawfully circular.  As discussed above, this Court has rejected similar arguments and affirmed the Commission's exercise of its discretion not to cumulate subject imports in each of the decisions relied upon by Plaintiffs here.  *See Id.* at 166-69, 605 F. Supp. 2d at 1369-71; *Allegheny Ludlum*, 30 CIT at 2002-06, 475 F. Supp. 2d at 1378-81; *Neenah*, 25 CIT at 710-11, 155 F. Supp. 2d at 773-74.

Nor have Plaintiffs provided any authority for their assertion that the Commission was obliged to explain further why differences in export-orientation and production are relevant to the purpose of discretionary cumulation in sunset reviews.  Pl. Br. at 31.  Neither the statutory language in 19 U.S.C. § 1675a(a)(7) nor the SAA provides any basis for imposing such a requirement.  Moreover, the caselaw, by confirming that the Commission can exercise its

discretion not to cumulate based on likely differences in conditions of competition, including

differences in export-orientation and production, rebuts the notion that the agency must provide

the type of further explanation advocated by Plaintiffs.  Plaintiffs again ignore that both the

Federal Circuit and this Court have affirmed the Commission in prior sunset reviews where the

Commission relied on factors like those it relied upon here in exercising its discretion not to

cumulate subject imports from Brazil, including differences in export-orientation and production.

*See, e.g.*, *Nucor*, 601 F.3d at 1294, 1296-97 (differences in export-orientation); *U.S. Steel*, 36

CIT at 1175-68, 856 F. Supp. 2d at 1318, 1322-24 (differences in export-orientation); *Nucor*, 32

CIT at 1412-14, 594 F. Supp. 2d at 1354-55 (differences in export-orientation and production),

*aff'd*, 601 F.3d at 1294-97; *U.S. Steel Corp.*, 32 CIT at 835-36, 572 F. Supp. 2d at 1341

(differences in production and capacity utilization); *Allegheny Ludlum*, 30 CIT at 2002-06, 475

F. Supp. 2d at 1378-81 (differences in production capacity); *Domestic Uranium Producers*, 25

CIT at 1013-15, 162 F. Supp. 2d at 653-54 (differences in production capacity).

### 2. The Commission Addressed Other Evidence that Plaintiffs Claim Was Ignored

Plaintiffs are incorrect that the Commission ignored record evidence that detracted from

its finding that the Section 232 absolute quota for Brazil was likely to continue through the

reasonably foreseeable future.  Pl. Br. at 36-37.  Indeed, the Commission expressly

acknowledged the disagreement among the parties on this very issue and cited to pages in

prehearing briefs submitted by Plaintiff and the other four domestic producers where they

presented arguments that the absolute quota for Brazil was not likely to continue going forward.

Views at 97 & n.487.  As the Commission found, however, only the President can alter,

terminate, or replace the absolute quota on Brazil.  *Id*. at 97-98.  As the Commission also found,

at the time of the closing of the record in these sunset reviews for CRS in August 2022, the

Section 232 absolute quota for Brazil had been in place more than four years since May 2018, and there had been no announcement by the Biden Administration that it was considering revising or removing the quota on Brazil in the reasonably foreseeable future.  *Id*. at 98.

Plaintiffs do not challenge any of this evidence on which the Commission relied.  Instead, Plaintiffs would prefer that the Commission had given more weight to evidence that the government of Brazil was unsuccessfully "putting pressure" on the Administration to have the Section 232 absolute quota for Brazil removed and evidence that Section 232 absolute quotas for countries other than Brazil were removed and replaced with less restrictive trade measures.  Pl. Br. at 36.  This evidence that Plaintiffs prefer does not render the Commission's finding that the Section 232 absolute quota for Brazil was likely to continue through the reasonably foreseeable future unsupported by substantial evidence.  The reasonableness of the Commission's finding is especially compelling since the quota for Brazil was in place at the time of the closing of the record in this case.  Views at 97-99.  In the end, the fact that the Commission weighed the conflicting evidence differently from Plaintiffs would have preferred does not mean that the Commission "ignored" the contradicting evidence.  Nor was the Commission required to discuss each piece of evidence in the record.  The Commission is presumed to have considered the full record, and the fact that it did not explicitly discuss each piece of evidence does not establish that it "ignored" such evidence.  *See, e.g.*, *Siemens Energy, Inc. v. United States*, 38 CIT 879, 992 F. Supp. 2d 1315 (2014) ("The Commission need not address every piece of evidence presented by the parties; absent a showing to the contrary, the court presumes that the Commission has considered all of the record evidence."), *aff'd*, 806 F.3d at 1367.

Moreover, the mere presence of some evidence on the record that could support an alternative conclusion in no way renders the Commission's conclusions as unsupported by

substantial evidence.  Based on its careful assessment of the record evidence, the Commission

reasonably concluded that the Section 232 absolute quota for Brazil, as currently structured and

enforced, likely would continue through the reasonably foreseeable future.  Views at 97-99.[15]

### 3.    The Findings of Two Dissenting Commissioners Have No Bearing on the Court's Review of the Commission's Findings

Plaintiffs' reliance on the dissenting views of two Commissioners is misplaced.  *See, e.g.*,

Pl. Br. at 32-36.  That the dissenting Commissioners, this Court, or Plaintiffs, may have weighed

the evidence differently, does not provide grounds to overrule the Commission's determination.

Indeed, "{a}lthough individual Commissioners reach{} divergent conclusions, '{t}he possibility

of drawing two inconsistent conclusions from the evidence does not prevent an administrative

agency's findings from being supported by substantial evidence.'"  *Siemens Energy*, 806 F. 3d at

1372 (quoting *Consolo*, 383 U.S. at 620); *see also Grupo Indus. Camesa*, 85 F.3d at 1582

("Although {a party} points to evidence supporting the dissenting commissioners' decision that

the domestic industry was not materially injured, this does not mean that the Commission's

affirmative determination is unsupported by substantial evidence.") (citing *Consolo*, 383 U.S. at

619-20).

As discussed above, Plaintiffs do not claim that any of the Commission's factual findings

pertaining to likely differences in conditions of competition are factually in error.  For example,

Plaintiffs do not dispute the Commission's findings that subject imports from Brazil had an

absolute quota unlike subject imports from China, India, Japan, and the United Kingdom.  Views

at 59.  Nor do Plaintiffs contest the Commission's findings that the Section 232 absolute quota

---

[15] Even the dissenting Commissioners, whose views Plaintiffs prefer, did not find that the absolute quota for Brazil was unlikely to continue through the reasonably foreseeable future.  *See* Separate and Dissenting Views of Comm'rs Schmidtlein and Stayin, at 1-7 (CR251).

for South Korea (141,018 short tons) was almost three times larger than the Section 232 absolute

quota for Brazil (57,251 short tons), that subject imports from South Korea maintained a

substantial presence in the U.S. market during the POR unlike subject imports from Brazil, that

the Brazilian CRS industry had less production and was less export-oriented than the South

Korean CRS industry during the POR.  *Id.* at 59-61.  Once again, all of these unchallenged

findings concerning differences in likely conditions of competition between subject imports from

Brazil and subject imports from the other five subject countries provide substantial evidence for

the Commission's exercise of its discretion not to cumulate Brazil with China, India, Japan,

South Korea and the United Kingdom.

Plaintiffs' numerous efforts to have the Court compare the dissent's findings with those

of the Commission (or to ignore the Commission's findings entirely) is simply another way of

asking the Court to reweigh evidence.  *See Metallverken Nederland B.V. v. United States,* 13 CIT

1013, 1017, 728 F. Supp. 730, 734 (1989) ("In asking the Court to negate a commissioner's

determination based upon the findings of dissenting commissioners, plaintiffs are, in essence,

asking the Court to reweigh the evidence.").  Plaintiffs' recitation of the dissent's findings and

failure to challenge or even acknowledge the Commission's findings demonstrate their failure to

appreciate the standard of review applicable to this appeal.  *See Maverick Tube Corp. v. United

States*, 2016 WL 703575, at *7 (Ct. Int'l Trade Feb. 22, 2016) ("In the final analysis, the

question is solely whether the agency's determination is supported by substantial evidence on the

record and is in accordance with law."), *aff'd,* 857 F.3d 1353 (Fed. Cir. 2017).

This Court recently rejected a similar argument by another plaintiff in *MTD Products Inc.

v. United States*, 2023 WL 2535885 (Ct. Int'l Trade Mar. 16, 2023).  Much like the Plaintiffs

here, the plaintiff in *MTD Products* recited the dissent's findings in arguing that the

Commission's determination was unsupported by substantial evidence.  In rejecting plaintiff's

reliance on the dissent, this Court in *MTD Products* found that ". . . substantial evidence review

does not permit the court to reweigh the evidence as {plaintiff} proposes." *Id.* at *7.  The Court

in *MTD Products* also found that "'{t}he possibility of drawing two inconsistent conclusions

from the evidence does not prevent an administrative agency's finding from being supported by

substantial evidence.'" *Id.* (citing *Siemens Energy*, 806 F.3d at 1372 and quoting *Consolo*, 383

U.S. at 620).  While opining that the conclusion drawn by the dissent was "supported by the

record," the Court in *MTD Products* also found that the ". . . conclusion drawn by the

Commission majority – considering the record as a whole and the evidence that detracts from

that conclusion is also supported by the record." *Id.*

### 4. The Commission Did Not Depart from Any "Past Practice" In Its Discretionary Cumulation Analysis

Plaintiffs claim that the Commission departed from an alleged past "practice" in

exercising its discretion not to cumulate the imports from Brazil with those from the other

subject countries.  Plaintiffs, however, fail to identify a specific practice from which the

Commission supposedly departed.  *See* Pl. Br. at 2, 6, 37-41.

Indeed, Plaintiffs overlook that "there is limited precedential value in sunset reviews

since each case presents unique interactions of the economic variables the Commission

considers." *Ugine-Savoie Imphy v. United States*, 26 CIT 851, 863, 248 F. Supp. 2d 1208,

1220 (2002).  In *Ugine-Savoie*, this Court emphasized that "{i}t is difficult to establish agency

practice in sunset reviews since the presence of a specific factor in a prior sunset review is not

dispositive of how a factor is interpreted in the current sunset review." *Id.* at 863, 248 F.

Supp. 2d at 1223.

Moreover, the four prior determinations cited by Plaintiffs are not indicative of any applicable "past practice" that would apply here.  Rather, two of the four sunset determinations cited by Plaintiffs involved only one country and therefore cumulation was not even at issue like it was here.  Pl. Br. at 38-39.[16]  One of the other two sunset determinations cited by Plaintiffs (Pl. Br. at 38-39) did not even involve Section 232 absolute quotas.  The only cited prior determination involving an absolute quota was factually distinct from this matter, concerning a different domestic like product, different domestic industry, different subject countries, and different likely conditions of competition for discretionary cumulation than those the Commission relied on here in exercising its discretion not to cumulate Brazil.[17]  At best, a comparison of *Steel Wire Rod* with the instant review demonstrates the *sui generis* nature of each case.  *See, e.g.*, *Hitachi Metals, Ltd. v. United States*, 949 F.3d 710, 718 (Fed. Cir. 2020) (noting that each injury by the Commission is *sui generis* and "{t}hat the Commission reached different outcomes in cases with different circumstances does not indicate that the Commission either committed legal error in the methodology it use{s} in this case or departed from the mode of analysis it regularly employs") (quotation omitted); *Cleo Inc. v. United States*, 501 F.3d 1291, 1299 (Fed. Cir. 2007) (noting that each injury investigation by the Commission is *sui generis* and, "{f}or that reason, prior determinations by the Commission with regard to one

---

[16] The two sunset determinations cited by Plaintiffs that involved only one country where cumulation was not at issue are:  *Clad Steel Plate from Japan*, Inv. Nos. 731-TA-739 (Fourth Review), USITC Pub. 4851 (Dec. 2018) and *Tin- and Chromium-Coated Steel Sheet from Japan*, Inv. Nos. 731-TA-860 (Third Review), USITC Pub. 4795 (June 2018).

[17] *See Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, and Trinidad and Tobago*, Inv. Nos. 701-TA-417 and 731-TA-953, 957-959, and 961 (Third Review), USITC Pub. 5100 (Aug. 2020); *Non-Oriented Electrical Steel from China, Germany, Japan, Korea, Sweden, and Taiwan*, Inv. Nos. 701-TA-506 and 508 and 731-TA-1238-1243 (Review), USITC Pub. 5140 (Dec. 2020).

industry typically provide little guidance for later determinations with regard to different industries").[18]

Moreover, if the "agency practice" that Plaintiffs contend was departed from is that the Commission failed to exercise its discretion to cumulate despite different likely conditions of competition, then Plaintiffs' argument falls short of demonstrating a departure from agency practice for two additional reasons.  First, Plaintiffs overlook the fact that the Commission consistently has exercised its discretion not to cumulate based upon differences in likely conditions of competition and been affirmed by this Court and the Federal Circuit.[19]  Second, an action by the Commission becomes an "agency practice" only when "a uniform and established procedure exists that would lead a party, in the absence of notification of change, reasonably to expect adherence to the established practice or procedure."  *Ranchers-Cattlemen Action Legal Found. v. United States*, 23 CIT 861, 884-85, 74 F. Supp. 2d 1353, 1374 (1999).  Plaintiffs cannot establish any reasonable expectation of an established past practice by pointing to just one prior Commission investigation that involved both cumulation and Section 232 absolute quotas, especially because the Commission has discretion not to cumulate in

---

[18]  We note that the Commission in two other sunset reviews involving steel products has similarly declined to cumulate imports from Brazil with those from other subject countries.  *See Carbon and Alloy Steel Cut-to-Length Plate from Austria, Belgium, Brazil, China, France, Germany, Italy, Japan, South Africa, South Korea, Taiwan, and Turkey*, Inv. Nos. 701-TA-560-561 & 731-TA-1317-1328 (Review), USITC Pub. 5399, at 60-68 (Jan. 2023); *Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-546 and 731-TA-1291-1297 and 731-TA-808 (Fourth Review), USITC Pub. 5380, at 59-67 (Nov. 2022).

[19]  *See, e.g.*, *Nucor*, 601 F.3d at 1294, 1296-97; *U.S. Steel*, 36 CIT at 1174-78, 856 F. Supp. 2d at 1322-24; *Nucor*, 32 CIT at 1412-14, 594 F. Supp. 2d at 1354-55, *aff'd*, 601 F.3d at 1294-97; *U.S. Steel Corp.*, 32 CIT at 835-86, 572 F. Supp. 2d at 1341; *Nucor*, 32 CIT at 763-65, 569 F. Supp. 2d at 1342; *Allegheny Ludlum*, US, 30 CIT at 2002-06, 475 F. Supp. 2d at 1378-81; *Domestic Uranium Producers*, 25 CIT at 1013-15, 162 F. Supp. 2d at 653-54; *Neenah*, 25 CIT at 710-12, 155 F. Supp. 2d at 773-74.

33

sunset reviews, and, as discussed above, has exercised its discretion by declining to cumulate based upon similar differences in likely conditions of competition among the subject countries in other prior investigations just as it did here for Brazil.

This Court rejected a similar argument by the plaintiff in *Allegheny Ludlum*.  There the plaintiff argued that the Commission had departed from its "past practice" in declining to exercise its discretion to cumulate subject imports from France.  *Allegheny Ludlum*, 30 CIT at 2003-06, 475 F. Supp. 2d at 1379-81.  In affirming the Commission's exercise of its discretion not to cumulate subject imports from France, the Court rejected plaintiff's "past practice" argument, observing that "{p}ursuant to statutory authority, the Commission has wide latitude in selecting the types of factors it considers relevant in undertaking its cumulation analysis, and that {e}ach individual sunset determination does not bind the Commission to use those same factors in other determinations."  *Id*. at 2006, 475 F. Supp. 2d at 1381.  The *Allegheny Ludlum* Court also observed that "the Commission has previously relied on conditions of competition in its cumulation determination and considered a variety of factors such as whether subject imports have maintained a postorder presence in the U.S. market" among other factors in exercising its discretion not to cumulate.  *Id*. at 2006, 475 F. Supp. 2d at 1381.  Moreover, the Court in *Allegheny Ludlum* rejected plaintiff's past practice argument since the plaintiff in that case had only cited "two prior reviews" in support of its losing argument that the Commission had a "past practice."  *Id*. at 2006, 475 F. Supp. 2d at 1381.

## V.    CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's Motion for Judgment on the agency record and affirm the Commission's negative determinations for Brazil in all respects.

Respectfully submitted,

Dominic L. Bianchi
General Counsel

*/s/ Andrea C. Casson*
Andrea C. Casson
Assistant General Counsel for Litigation

*/s/ David A. Goldfine*
David A. Goldfine
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 708-5452
Facsimile: (202) 205-3111
david.goldfine@usitc.gov

*Attorneys for Defendant United States International Trade Commission*

Dated: June 13, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedures 2(B)(1) and (2), I hereby certify that the attached

**DEFENDANT UNITED STATES INTERNATIONAL TRADE COMMISSION'S PUBLIC**

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S AND PLAINTIFF-**

**INTERVENORS' MOTION FOR JUDGMENT ON THE AGENCY RECORD** contains

11,132 words, according to the word-count function of the word processing system used to

prepare this brief (Microsoft Word 2010).

Dated: June 13, 2023

_/s/ David A. Goldfine_
David A. Goldfine
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 708-5452
Facsimile: (202) 205-3111
david.goldfine@usitc.gov