*PUBLIC VERSION*

## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| CLEVELAND-CLIFFS INC.,<br>    Plaintiff,<br><br>NUCOR CORPORATION, STEEL DYNAMICS,<br>INC., UNITED STATES STEEL CORPORATION,<br>    Plaintiff-Intervenors<br><br> v.<br><br>UNITED STATES,<br>    Defendant,<br><br> and<br><br>COMPANHIA SIDERÚRGICA NACIONAL S.A.,<br>COMPANHIA SIDERÚRGICA NACIONAL, LLC,<br>USINAS SIDERURGICAS DE MINAS GERAIS<br>S.A. USIMINAS<br>    Defendant-Intervenors. | Court No. 22-00257 |

---

## DEFENDANT-INTERVENORS' RESPONSE BRIEF TO PLAINTIFF'S AND PLAINTIFF-INTERVENORS' MOTION FOR JUDGMENT ON THE AGENCY RECORD

---

Craig A. Lewis
Michael G. Jacobson

HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC  20004
202-637-5600

*Counsel to CSN S.A. and
CSN LLC*

Lian Yang
Lucas A. Queiroz Pires

ALSTON & BIRD LLP
The Atlantic Building
950 F Street, NW
Washington, DC 20004
202-239-3300

*Counsel to USIMINAS*

June 27, 2023

# **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................. 1

II.   RULE 56.2 STATEMENT ..................................................................................... 3

     A.   Administrative Decision Under Review................................................... 3
     B.   Issues Presented and Summary of Argument .......................................... 4

          1.   Was the Commission's Determination Not to Cumulate Imports from Brazil with other Subject Imports Supported by Substantial Evidence and In Accordance with Law? ....................................................................... 4

III.   STATEMENT OF FACTS .................................................................................... 5

IV.   STANDARD OF REVIEW ................................................................................... 5

V.   ARGUMENT ......................................................................................................... 5

     A.   The Commission's Discretion Not to Cumulate Subject Imports is Broad, as Confirmed by This Court's Prior Rulings .................................... 5
     B.   The Commission Did Not Rely on An Impermissible Circular Analysis When It Exercised Its Discretion Not to Cumulate Subject Imports From Brazil ................... 7

          1.   Neenah ............................................................................................ 10

          2.   Allegheny ....................................................................................... 11

          3.   Nucor .............................................................................................. 12

     C.   The Commission's Decision Not to Cumulate Subject Imports from Brazil with the Imports from the Other Subject Countries Was Supported by Substantial Evidence 13

          1.   Section 232 Quota and Likely Import Volumes .............................. 13

          2.   Proportion of Apparent Consumption and Import Trends ............... 15

          3.   Export Orientation .......................................................................... 16

          4.   Foreign Production ......................................................................... 17

     D.   No Commission Past Practice Exists that Overcomes Its Broad Discretion Not to Cumulate in this Case ....................................................... 18

          1.   The Standard Articulated in DAK Americas LLC Is Not Relevant to the Commission's Statutory Discretion on Cumulation ....................... 18

          2.   Plaintiffs cannot identify any pattern involving Section 232 quota measures – and certainly no established ITC practice ............................... 19

          3.   The Commission has previously decumulated imports of steel products from Brazil on similar bases as the current case ............................ 21

VI.   CONCLUSION .................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ad Hoc Comm. of Domestic Uranium Producers v. United States,*
    *25 CIT 1010, 162 F. Supp. 2d 649 (2001)* .................................................................6

*Allegheny Ludlum Corporation v. United States*,
    475 F. Supp. 2d 1370 (Ct. Int'l Trade 2006) ................................................ passim

*DAK Americas LLC v. United States*
    456 F. Supp. 3d 1340 (Ct. Int'l Trade 2020) .......................................................18, 19

*Neenah Foundry Co. v. United States,*
    205 CIT 702, 155 F. Supp. 2d 766 (2001) ..................................................... passim

*Nucor Corp. v. United States*,
    32 CIT 1380, 594 F. Supp. 2d 1320 (2008),
    *aff'd,* 601 F.3d 1291 (Fed. Cir. 2010) .............................................................. passim

*Nucor Corporation v. United States*,
    33 CIT 157, 605 F. Supp. 2d 1361 (Ct. Int'l Trade 2009) .............................6, 8, 12

*Olin Corporation-Brass Group v. United States*,
    28 C.I.T. 29 (2004) .............................................................................................6, 7

*U.S. Steel Corp. v. United States*,
    32 CIT 832, 572 F. Supp. 2d 1334 (2008) ................................................................6

*U.S. Steel Corp. v. United States*,
    36 CIT 1172, 856 F. Supp. 2d 1318 (2012) .............................................................6

*U.S. Steel Group v. United States*,
    96 F.3d 1352 (Fed.Cir. 1996)..........................................................................13, 18

*US Magnesium LLC v. United States*,
    36 C.I.T. 690 (2012) ..............................................................................................6

*USX Corp. v. United States,*
    12 C.I.T. 205, 682 F. Supp. 60 (1988) ...................................................................11

STATUTES

19 U.S.C. § 1675a(a)(7) ........................................................................................1, 4, 5

## <u>TABLE OF AUTHORITIES (CONT'D)</u>

**Page(s)**

FEDERAL REGISTER MATERIALS

87 Fed. Reg. 49,886 (Dep't of Commerce) (Aug. 12, 2022).............................................3

87 Fed. Reg. 52,360 (Dep't of Commerce) (Aug. 25, 2022).............................................3

FEDERAL REGISTER MATERIALS

*Brass Sheet and Strip from Brazil, Canada, France, Germany, Italy, Japan, Korea, the Netherlands, and Sweden*,
    Inv. Nos. 701-TA-269-270 (Review) and 731-TA-311-317 and 379-380 (Review),
    USITC Pub. 3290 (Apr. 2000)...............................................................................6, 7

*Carbon and Alloy Steel Cut-to-Length Plate from Austria, Belgium, Brazil, China, France, Germany, Italy, Japan, South Africa, South Korea, Taiwan, and Turkey*,
    Inv. Nos. 701-TA-560-561 and 731-TA-1317-1328 (Review), USITC Pub. 5399 (Jan. 2023) ...........................................................................................................23

*Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, and Trinidad and Tobago*,
    Inv. Nos. 701-TA-417 and 731-TA-953, 957-959, and 961 (Third Review), USITC Pub. 5100 (Aug. 2020).............................................................................20

*Clad Steel Plate from Japan*,
    Inv. No. 731-TA-739 (Fourth Review), USITC Pub. 4851 (Dec. 2018)................................20

*Cold-Rolled Steel Flat Products from Brazil, China, India, Japan, South Korea, and the United Kingdom*,
    Inv. Nos. 701-TA-540-543 and 731-TA-1283-1287 (Review), USITC Pub. 5339 (Aug. 2022) .....................................................................................................1, 22

*Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*,
    Inv. Nos. 701-TA-545-546 and 731-TA-1291-1297 and 731-TA-808 (Fourth Review), USITC Pub. 5380 (Nov. 2022)................................................................23

*Hot-Rolled Steel from Brazil, Japan, and Russia*,
    Inv. Nos. 701-TA-384 and 731-TA-806-808 (Second Review), USITC Pub. 4237 (May 2011).................................................................................................22

*Non-Oriented Electrical Steel from China, Germany, Japan, Korea, Sweden, and Taiwan*
    Inv. Nos. 701-TA-506 and 508 and 731-TA-1238-1243 (Review), USITC Pub. 5140 (Dec. 2020) .....................................................................................................20

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Stainless Steel Bar from Brazil, India, Japan, and Spain,*
   Inv. Nos. 731-TA-678, 679, 681, and 682 (Fourth Review), USITC Pub. 4820 (Sept.
   2018) .................................................................................................................... passim

*Tin- and Chromium- Coated Steel Sheet from Japan,*
   Inv. Nos. 731-TA-860 (Third Review), USITC Pub. 4795 (June 2018) ................................20

## I.    INTRODUCTION

Defendant-Intervenors Companhia Siderurgica Nacional S.A. ("CSN") and Usinas Siderúrgicas de Minas Gerais S.A. – USIMINAS ("USIMINAS") (together, "Defendant-Intervenors") hereby submit this response in opposition to the motion for judgment upon the agency record and memorandum dated May 16, 2023 ("Pl. Mem.") filed by Plaintiff Cleveland-Cliffs Inc. and Plaintiff-Intervenors (collectively "Plaintiffs").  Defendant-Intervenors support the arguments presented by the Defendant U.S. International Trade Commission's (the "Defendant", the "Commission", or the "ITC") Memorandum in Opposition to Plaintiff's and Plaintiff Intervenors' Motion for Judgment on the Agency Record dated June 13, 2023 ("ITC Mem.").  This brief is intended to supplement and expand upon the Commission's arguments in its memorandum.

At issue in this appeal is the ITC's negative determination for Brazil in the five-year ("sunset") reviews of the antidumping duty and countervailing duty orders on imports of *Cold-Rolled Steel Flat Products from Brazil, China, India, Japan, South Korea, and the United Kingdom*, Inv. Nos. 701-TA-540-543 and 731-TA-1283-1287 (Review), USITC Pub. 5339 (Aug. 2022) (P.R. 300) ("Views").  In that proceeding, the Commission determined to decumulate imports from Brazil from other imports under consideration and made a negative determination of likelihood of continuation or recurrence of injury for Brazil.  *Id*. at 42-44, 69-74.

As we further discuss below, the Commission has discretion under the governing statute to decumulate imports in a sunset review. 19 U.S.C. § 1675a(a)(7) (stating that the Commission "may" cumulatively assess imports in a sunset review).    This Court and the Court of Appeals for the Federal Circuit have repeatedly affirmed that the agency has very wide latitude in identifying and weighing the factors that it deems relevant to its exercise of that discretion. *See* ITC Mem. at 9-12.  This Court's analysis must start there – a great amount of deference to the

Commission's exercise of its discretion to decumulate imports from Brazil in the underlying sunset review.

Plaintiffs challenge the Commission's decision to decumulate Brazil on several grounds.[1] Plaintiffs claim that the agency employed impermissible "circular reasoning" in reaching its decumulation decision, that the decumulation decision was not sufficiently explained, and that certain elements of the decisions were purportedly contrary to agency "practice."

None of this is true.  The Commission's decision to decumulate in this case did not employ "circular reasoning," but was instead clearly and methodically laid out and fully supported by substantial evidence on the basis of an ample evidentiary record that was before the agency.  Rather than relying on a single factor, the Commission identified *multiple* significant differences in the conditions of competition uniquely faced by subject imports from Brazil that supported a decumulated analysis for Brazil.  That analysis and reasoning is clearly articulated in the Commission's written opinion and is fully supported by the voluminous record accumulated by the agency, including questionnaire responses, written responses to Commission questions, legal and factual briefing, and an all-day public hearing with industry witnesses.

Plaintiffs also disagree with how the Commission interpreted the evidence in the sunset reviews. Plaintiffs seek to identify how the Commission *could have* decided the underlying case. However, the ability to draw different inferences (even contradictory inferences) from the evidence does not undermine or invalidate the Commission's reasoned determination.  This is particularly true in the area of decumulation in sunset reviews, in which Congress has endowed the agency with such wide discretion.  Nor is there any agency practice established since the Section 232

---

[1] Plaintiffs do not challenge the Commission's negative injury determination for Brazil – only the Commission's determination to decumulate imports from Brazil from other imports. Therefore, the only issue before the Court is the Commission's determination to decumulate.

measures entered into force in 2018 that overwrites the Commission's broad discretion on cumulation in sunset reviews.

In the end, Plaintiffs' appeal is little more than a thinly-veiled request for this Court to reweigh the evidence and second-guess the Commission's well-reasoned determination – something the Court is simply not permitted to do under the applicable standard of review. This Court must only decide whether the Commission's decision to decumulate Brazil was supported by substantial evidence on the agency record and in accordance with law. The answer is "yes."

Plaintiffs' appeal is without merit, and there is no basis for remand. We respectfully request that this Court dismiss Plaintiffs' motion and affirm the Commission's determination.

## II.    RULE 56.2 STATEMENT

### A.  Administrative Decision Under Review

Plaintiff and Plaintiff-Intervenors seek review of the Commission's negative determination with respect to Brazil in the sunset reviews of the antidumping and countervailing duty orders on imports of cold-rolled steel ("CRS"). *See* Views.[2] The Commission published its negative final determination for Brazil on August 12, 2022. 87 Fed. Reg. 49,886 (Aug. 12, 2022), PR298. Accordingly, the Department of Commerce ("Commerce") published the revocation of the antidumping and countervailing duty orders on imports of CRS from Brazil on August 25, 2022. 87 Fed. Reg. 52,360 (Dep't of Commerce) (Aug. 25, 2022).

---

[2] Citations to the public record in this brief are indicated by "PR" and citations to the confidential record are indicated by "CR"

### B.  Issues Presented and Summary of Argument

### 1.  Was the Commission's Determination Not to Cumulate Imports from Brazil with other Subject Imports Supported by Substantial Evidence and In Accordance with Law?

Yes.  The Commission has wide discretion under the statute to determine whether to cumulate imports in a sunset review and what factors to consider and weigh in reaching that determination.  19 U.S.C. § 1675a(a)(7); *Nucor Corp. v United States*, 601 F.3d 1291, 1293 (Fed. Cir. 2010) (affirming the Commission's discretion to decumulate in a sunset review).  The Commission in the present case determined not to cumulate imports from Brazil with other subject imports based on considering and weighing several separate factors, including, but not limited to, the particular trade restrictive measures applicable to imports from Brazil (i.e., uniquely small absolute quota limits under Section 232 that was expected to continue in the foreseeable future), the historically low market presence of Brazilian imports in the U.S. market, the relative lack of export orientation of the Brazilian industry compared to other industries under review, and the size of Brazilian production. Views at 58-61.

As such, the Commission did not focus "solely," or even principally, on a single factor in determining to exercise its discretion not to cumulate Brazilian imports with other subject imports under review and did not engage in "circular" reasoning in evaluating these conditions of competition.  Nor did the Commission "ignore" evidence concerning the likely permanence of the Section 232 restrictions on imports from Brazil.  To the contrary, the Commission considered ample evidence, including evidence presented by Plaintiffs concerning whether the Section 232 measures would likely be removed within the foreseeable future.  Nor have Plaintiffs demonstrated that the Commission deviated from an established or binding "practice" with regard to the consideration of the relevance of Section 232 duties to the cumulation decision.  Indeed, as the

Commission points out in its memorandum, each review is factually *sui generis*, and the cases cited by Plaintiffs that purportedly establish a consistent Commission practice since 2018 do nothing of the sort.

In short, Plaintiffs urge this Court to weigh the record evidence differently from the Commission.  But that is not the applicable standard of review.  The Commission's discretionary decision not to cumulate Brazilian imports was unquestionably lawful, reasonable, and supported by substantial evidence.  The Commission did not fail to consider the record as a whole in reaching that reasonable determination.

## III.    STATEMENT OF FACTS

Defendant-Intervenors agree with and incorporate by reference the statement of facts presented in the Defendant's Memorandum. ITC Mem. at 3-6.

## IV.    STANDARD OF REVIEW

Defendant-Intervenors agree with and incorporate by reference Defendant's statement as to the standard of review.  ITC Mem. at 7-9.

## V.    ARGUMENT

### A.  The Commission's Discretion Not to Cumulate Subject Imports is Broad, as Confirmed by This Court's Prior Rulings

Defendant correctly states that the Commission has "wide latitude" in sunset reviews to identify the relevant conditions of competition to support its exercise of discretion whether to cumulate.  19 U.S.C. § 1675a(a)(7).  *See also* ITC Mem. at 10-11, citing to *Allegheny Ludlum Corp. v. United States*, 30 CIT at 2002-05, 475 F. Supp. 2d at 1378-80, *Nucor Corp. v. United States,* 601 F.3d 1291, 1293 (Fed. Cir. 2010).  This Court has determined that the Commission has

discretion not to cumulate, provided it had a reasoned basis for doing so.  *See US Magnesium LLC v. United States,* 36 C.I.T. 690 (2012).

This Court has consistently confirmed the breadth of the Commission's discretion under this legal standard and dismissed challenges to its exercising of its authority, including in several cases cited by Defendant.  *See e.g.* ITC Mem. at 10-11 (citing to *Nucor, 601* F.3d at 1295-96*; U.S. Steel Corp. v. United States*, 36 CIT 1172, 1174-78, 856 F. Supp. 2d 1318, 1322-24 (2012)*; Nucor,* 33 CIT at 167-68, 605 F. Supp. 2d at 1370*; Nucor Corp. v. United States*, 32 CIT 1380, 1407-15, 594 F. Supp. 2d 1320, 1350-56 (2008)*; U.S. Steel Corp. v. United States,* 32 CIT 832, 572 F. Supp. 2d 1334 (2008)*; Allegheny Ludlum,* 30 CIT at 1998-2006, 475 F. Supp. 2d at 1375- 1381*; Domestic Uranium Producers*, 25 CIT at 1014, 162 F. Supp. 2d at 654*; Neenah,* 25 CIT at 709-12, 155 F. Supp. 2d at 772-74).

There are even more examples of this Court affirming the Commission's discretion.  For instance, this Court affirmed the Commission's decision not to cumulate imports of magnesium from Russia and China in a sunset review, because the Commission articulated that those imports were subject to different conditions of competition, including different principal uses and producers' different capacity, production, and shipments trends. *US Magnesium LLC v. United States,* 36 C.I.T. 690, 694-96 (2012).  Defendant-Intervenors found no cases from this Court or the Court of Appeals in which the Court overturned the Commission's discretion to decumulate in a sunset review on the basis of "not in accordance with law."

Additionally, in *Olin Corporation-Brass Group*, this Court affirmed the Commission's decision not to cumulate on the basis of different conditions of competition, including ownership interest, presence in the U.S. market, and commitment to production in the United States.  *See Olin Corporation-Brass Group v. United States,* 28 C.I.T. 29, 33-34 (2004) (reviewing *Brass Sheet and*

*Strip from Brazil, Canada, France, Germany, Italy, Japan, Korea, the Netherlands, and Sweden,*
Inv. Nos. 701-TA-269-270 (Review) and 731-TA-311-317 and 379-380 (Review), USITC Pub.
3290 (Apr. 2000)) ("The court has finally reviewed the ITC's record and finds substantial evidence
to exist thereon in support of the above-quoted analysis. Moreover, in the light of that record, the
court cannot conclude that it was an abuse of discretion for the ITC not to cumulate whatever
imports there may have been or could be from some eight other producers of brass sheet and strip
in Korea.")

In short, there are numerous examples of this Court upholding the Commission's decision
not to cumulate in sunset reviews., commensurate with the Commission's broad discretion.
Plaintiffs have not pointed to any case with any set of facts where this Court or the Court of Appeals
has limited the Commission's discretion.  This Court should not break new ground in the present
case.

**B.  The Commission Did Not Rely on An Impermissible Circular Analysis When It Exercised Its Discretion Not to Cumulate Subject Imports From Brazil**

Plaintiffs' appeal centers on their contention that "{t}he Commission majority committed
legal error by focusing exclusively, or almost exclusively, on a comparison of the likely volumes
of the Brazilian imports and the other subject imports in its 'conditions of competition' analysis."
Pl. Mem. at 3.  Plaintiffs argue that the Commission's separate and distinct cumulation and injury
determinations involve certain common facts and findings which amount to "'an impermissible
circular {likely injury} analysis.'" Pl. Mem. at 3.

Plaintiffs are wrong.  While the Commission would certainly have been within its authority
to rely exclusively on the unique existence of a very small absolute quota on Brazilian CRS to
justify its decumulation decision, the Commission did not, as a matter of fact, rely exclusively, or
even "almost exclusively" on that factor.  As the Commission amply lays out in its brief, the

Commission's decumulation analysis encompassed far more than this single factor and included express consideration of several other factors including the differences in the trade restrictive measures on Brazil than those on other subject countries, the low comparative market presence of Brazilian imports, the lack of export orientation of the Brazilian industry compared to other industries under review, and production size.  ITC Mem. at 13-21.  Even applying the purported legal standard identified by Plaintiffs, the Commission did not apply circular reasoning.  Instead, the Commission acted reasonably, and well within its statutory authority, when it exercised its discretion to decumulate on the basis of multiple conditions of competition in the market.

Moreover, the purported "circular reasoning" standard Plaintiffs are seeking to impose on the Commission's discretion – at least as it is characterized by Plaintiffs – is itself dubious. Plaintiffs have erected their theory based upon their interpretation of three opinions all from this Court, and thus none are binding precedent — *Neenah Foundry Co. v. United States*, 155 F. Supp. 2d 766, 772 (Ct. Int'l Trade 2001) ("*Neenah*"); *Allegheny Ludlum Corporation v. United States*, 475 F. Supp. 2d 1370, 1376 (Ct. Int'l Trade 2006) ("*Allegheny*"); and *Nucor Corporation v. United States*, 605 F. Supp. 2d 1361 (Ct. Int'l Trade 2009) ("*Nucor*").  Notably, however, **none** of these cases resulted in this Court overturning the Commission's determination not to cumulate. Plaintiffs have not pointed to a single case from this Court, or from the Court of Appeals, that has overturned or remanded the Commission's exercising of its discretion on cumulation in sunset reviews.  Indeed, the standard articulated in these three cases regarding "circular reasoning" has, at most, very narrow application to circumstances that are simply not present in the Commission's determination in these sunset reviews.

This Court has acknowledged that it is "an abuse of discretion to engage in circular analysis {that relies} on the **same** factors for refusal to cumulate as for an ultimate negative injury

determination." *Neenah*, 155 F. Supp. 2d at 772 (emphasis added).  This is a very specific and very limited basis for finding an abuse of discretion.  There are inexhaustible ways that the Commission could partially rely on a given factor (e.g., absolute volume restrictions) in a manner that cannot fairly be considered "circular" and is not arbitrary or an abuse of discretion.

For one, it is not circular for the Commission to assess the likely volume of imports for **different purposes** in the cumulation and injury analyses.  *See Neenah* at 774 (finding that "despite plaintiffs' arguments to the contrary, the problem of circularity is avoided," because the Commission analyzed import volume trends in the cumulation analysis for a different purpose than its analysis of import volume trends to determine the likelihood of increased volume effects in the event of revocation).

It is also not circular to assess likely import volumes in the cumulation analysis if the Commission also assesses **other conditions of competition** in the cumulation analysis.  *See Allegheny*, 475 F. Supp. 2d at 1379 (finding that "the Commission did not consider **identical factors** in making the two determinations . . ." and those additional conditions of competition were sufficient to overcome the challenge on the basis of alleged circular reasoning).  Plaintiffs overreach in arguing that the Commission has improperly "focus{ed} exclusively, or almost exclusively, on a comparison of the likely volumes of the Brazilian imports and the other subject imports in its 'conditions of competition' analysis." *See* Pl. Mem. at 3.  However, the Commission is permitted to focus "almost exclusively" on one factor, in cases where the Commission also assesses at least one other factor.

Below we provide a more detailed discussion of each of the three CIT cases relied upon by Plaintiffs for their "circularity" argument.  As elucidated below, each case actually affirms the

Commission's broad discretion to decumulate in sunset reviews, and demonstrates that the circularity standard is at best quite narrow in light of the Commission's broad discretion.

### 1. *Neenah*

In *Neenah*, this Court upheld a similar Commission determination not to cumulate. In doing so, it articulated several broad bases by which the Commission could avoid any issues of circular reasoning.

First, this Court found that Congress intended that the Commission not place the cart in front of the horse by finding "independent causation of material injury ***before*** any consideration of cumulation." *Neenah*, 155 F. Supp. 2d at 772 (emphasis added). This is, however, a low bar. Indeed, the Commission's standard procedure in its determinations (including in this case) is to address cumulation first, and then address injury after making its determinations on cumulation.

The *Neenah* Court also explained that another means by which the Commission can ensure that the "problem of circularity is avoided" Is to consider the same factors and data for different purposes. *Id* at 774. For instance, import trends, such as differences in current or likely import volumes, can be used first to determine whether to cumulate based on a comparative analysis of imports from various subject countries, and then can be used for a different purpose in the injury-causation analyses for imports from each country. *Id.* (explaining that in a cumulation analysis the Commission often uses volume and market share trends to compare the conditions of ***different exporting countries*** but in a causation analysis, it could use the same trends to consider whether "***one country*** {is} likely to exhibit increased volume and price effects in the event of revocation," especially "when trends for imports from {. . .} other countries under {the} ITA order are likely to be negligible" (emphasis added)).

There is no absolute prohibition against "the reliance on volume and price trends *per se* in considering cumulation;" instead, the Commission may decumulate if it has "sufficiently analyzed whether those differing trends reflected actual ***differences*** in the way that the imports affected the domestic market." *Id*. (emphasis added) (citing *USX Corp.*, 682 F. Supp. at 74 (1988)).  Indeed, different trends may be such powerful evidence "reflect{ing} actual differences in the way imports from various countries affect the domestic market {that they} '***alone*** may justify a decision not to cumulate.'" *Id.* at 772–73 (citing *USX Corp.*, 682 F. Supp. at 74 (1988)) (emphasis added).  This Court explains that "in a case where exports from only one country are likely to exhibit increased volume and price effects in the event of revocation, but trends for imports from each of the other countries under an ITA order are likely to be negligible, the ITC would be justified in deciding not to cumulate imports from the first country with those from the others." *Id*.  By the same reasoning, very small, expected imports from Brazil upon revocation as a result of the Section 232 quota in the present case is a non-circular basis for decumulating from other countries that would be expected to seek substantially increased volume and price effects upon revocation.

### 2. *Allegheny*

In *Allegheny* this Court once again upheld a discretionary decision not to cumulate certain imports that involved "further justification" beyond absolute volume—in that case, evidence of subject export capacity and declining subject imports during the period of review. *Allegheny*, 475 F. Supp. 2d at 1379.  This Court found the fact that "the Commission did not consider ***identical factors*** in making the two determinations . . ." meant that there was no impermissible circular reasoning.  *Id.* at 1379 (emphasis added).  Thus, consideration of likely volumes together with other factors (in that case, volume and price trends as part of the cumulation analysis), was deemed sufficient to avoid the allegation of employing circular reasoning.

The *Allegheny* Court also recognized and emphasized the Commission's broad discretion, stating that "discretionary cumulation does not preclude the Commission from considering any factors it considers relevant, much less relying on an analysis of pre- and post-order pricing behavior and volume trends." *Id* at 1378.

The *Allegheny* Court also reaffirmed that the Commission may consider the same information (including import trends) for different purposes in the cumulation and then injury determinations and overcome any circularity concerns. *Id.* at 1378-9 (citing favorably to *Neenah*).

### 3. *Nucor*

This Court in *Nucor* barely touches at all upon the issue of circular reasoning—only addressing it in a footnote. *See Nucor*, 605 F. Supp. 2d at n. 12. The *Nucor* Court, like the *Neenah* and *Allegheny* Courts, found that the Commission's decision to decumulate imports from certain countries was lawful.

The Court explained that "basing the cumulation decision ***solely*** on the likely volume of imports ***without further justification may*** constitute an impermissible circular analysis that relies on the same factors for refusal to cumulate as for an ultimate negative injury determination." *Id.* at 1370 n.12 (emphasis added). However, as in *Neenah* and *Allegheny*, this Court applied this standard very narrowly and dismissed any circularity concerns because of at least one additional factor supporting decumulation – in this case, reference to a foreign producer's affiliation with a domestic producer as an additional factor.

If anything, *Nucor* reaffirms the breadth of the Commission's discretionary authority on cumulation in sunset reviews. This Court explains that "the cumulation provision is ambiguous. Cumulation in sunset reviews is discretionary. The cumulation provision does not require the Commission to consider any particular factors . . . and the Commission 'has wide latitude in

selecting the types of factors it considers relevant' in its cumulation analysis." *Id.* at 1369 (citing *Allegheny*).   This Court further explains that "it is within the purview of the Commission to determine the weight to be assigned to the evidence it evaluates."  *Id.* at 1371 (referencing *U.S. Steel Group v. United States*, 96 F.3d 1352, 1357 (Fed. Cir. 1996).  All of this is true here.  The broad deference to the Commission that this Court articulated in *Nucor* directly undercuts Plaintiff's claims.

### C.  The Commission's Decision Not to Cumulate Subject Imports from Brazil with the Imports from the Other Subject Countries Was Supported by Substantial Evidence

Plaintiffs mischaracterize the Commission's decumulation analysis as one that focused on a simple "comparison of the likely volumes of the Brazilian imports and the other subject imports in its 'conditions of competition' analysis."   Pl. Mem. at 3-4, 18, 25-29.  To the contrary, the Commission reviewed and articulated in its analysis several factors that contributed to its finding that subject imports from Brazil would likely compete under distinct conditions of competition. Views at 60-61.  These factors include the trade restrictive measures on subject imports (including import volume limited by the Section 232 absolute quota and expected future volumes due to its likelihood to continue for the foreseeable future), share of imports from Brazil in U.S. apparent consumption, import trends, Brazil's lack of export orientation, and Brazilian production. These factors are supported by extensive record evidence that Plaintiffs have not challenged in this appeal.

#### 1.  *Section 232 Quota and Likely Import Volumes*

The Commission found differences in likely conditions of competition between Brazil and other subject countries due to a uniquely low absolute cap on imports from Brazil that affect Brazil's "ability to supply and compete in the U.S. market."  Views at 58-59; fn. 298.  The

Commission's record contains evidence showing that, because the quota on imports from Brazil was so small, even medium sized sales cannot be made.  CSN and USIMINAS Joint Posthearing Br. at 5, 10, 11, Attachment 1 at 9, 17, 18, 23, 29, 43, PR 220.  The absolute quota on imports from Brazil, and the expected future import volumes and characteristics of those imports subject to the quota, differentiates imports from Brazil from South Korea and other subject countries.

Specifically, Defendant-Intervenors presented evidence to the Commission in the sunset review that the low quarterly quota on imports from Brazil was a unique trade restrictive measure that had significant chilling effects on sales, forcing Brazilian producers to concentrate their limited sales on specialty and value-added product categories that justified the lower sales volume. *Id.* (explaining that the annual quota is further divided into four quarters and multiple product categories, such that the availability of the quota in any given quarter presents tremendous uncertainties and commercial risks, causing a chilling effect on exports as U.S. customers are discouraged from initiating sales negotiations with Brazilian producers).  Subject imports from South Korea were the only other subject imports that were restricted by an absolute quota. However, those imports are subject to a quota almost three times larger than the absolute quota for subject imports from Brazil, and were therefore able to perform much larger sized sales.  Views at 60.  Further, there is no absolute cap on imports from the remaining subject countries (China, India, Japan, and the United Kingdom). *Id.* at 59.  Accordingly, the Commission correctly found that subject imports from all other countries are able to compete for much larger sales than subject imports from Brazil. *Id.* at 61.

Contrary to Plaintiffs' arguments, the Commission did not ignore evidence that the Section 232 quota applicable to Brazil might not continue through the reasonably foreseeable future.  Pl. Mem. at 36-37.  ITC Mem. at 27-29.  The record contains extensive evidence demonstrating a lack

of indication that Section 232 trade actions would be terminated in the reasonably foreseeable future.   CSN and USIMINAS Joint Posthearing Br. at 7, PR 220.   These include evidence submitted by Defendant-Intervenors and other parties, including from the Brazilian Government, which show that the United States saw no political climate to lift tariffs on Brazilian steel.  *Id.*; CSN and USIMINAS Joint Final Comments at 8, PR 241; Hearing Transcript at 15 (Costellini and Campos), PR 227 (confirming there were no ongoing negotiations between the Brazilian Government and the U.S. government concerning Section 232 measures).   Thus, the Commission appropriately found through its analysis of the full information on the record that "although the parties disagree, {there is} nothing in the record of these reviews that the Section 232 trade actions, an absolute quota, will be terminated in the reasonably foreseeable future."  Views at 97.   Indeed, at the time of the closing of the record of the CRS reviews, the Section 232 absolute quota for Brazil was unchanged.  ITC Mem. at 27-28.

### 2.  *Proportion of Apparent Consumption and Import Trends*

In addition to the low volume cap imposed by the Section 232 quota, the Commission determined that the annual absolute quota on subject imports from Brazil was equivalent to only 0.2 percent of apparent U.S. consumption in 2021.  Views at 60; ITC Mem. at 14.  By contrast, the quota on subject imports from South Korea amounted to 0.5 percent of U.S. apparent consumption in 2021, and the Section 232 measures on imports from other subject countries were not capped. *Id.*  The Commission further explained that subject imports from Brazil remained well below their absolute quota cap and were virtually absent from the U.S. market during the POR, but by contrast, subject imports from South Korea approached their significantly higher quota limit during the POR.  Views at 60; ITC Mem. at 14-15.  This is consistent with the record evidence on the significant chilling effect of the absolute quota.  Specifically, the low quota limits each quarter

presented tremendous uncertainties and commercial risks, thereby discouraging U.S. customers from initiating sales negotiations with Brazilian producers.  *See* CSN and USIMINAS Joint Posthearing Br. at 5, Exhibit 6, PR 220 (stating that the uncertainty and associated commercial risks due to the extremely small Section 232 quota limit Brazilian producers' ability to make many sales negotiations with potential customers).  Thus, contrary to Plaintiffs' claim, the Commission received and reviewed extensive evidence beyond the Section 232 quota volume when deciding not to cumulate subject imports from Brazil.

### 3.  *Export Orientation*

Plaintiffs also ignored the Commission's analysis of the differences in export-orientation between the Brazilian CRS industry and the South Korean industry), based on import data and foreign producers' questionnaires.  Views at 60.  Defendant accurately summarized the Commission's articulation of this condition of competition that differentiates imports from Brazil from South Korean imports.  ITC Mem. 15-16.  Indeed, Brazil's ratio of exports to total shipments was [                                                    ].  Staff Report, at Table IV-12, IV-35, IV-26, and IV-43, CR 240. CSN and USIMINAS Joint Posthearing Brief at Attachment 1 at 14, CR 237.  The responding Brazilian producers' exports as a share of total shipments of CRS ranged from [      ] to [      ] percent during the POI, while their exports to the United States as a share of total shipments ranged from  [      ] percent to [      ] percent.  Views at 27.  In contrast, South Korea was the second-largest exporter of CRS in 2021.  *Id.* at 45.  The vast majority of total shipments of CRS from Brazil was destined to Brazil's domestic market: by quantity, domestic shipments accounted for no less than [          ] of total shipments by responding producers in Brazil during the POR.  Staff Report, at IV-34, CR 240.  CSN and USIMINAS Joint Posthearing Brief at Attachment 1 at 20, CR 237.

Moreover, Defendant-Intervenors submitted extensive evidence to the Commission demonstrating that the Brazilian industry was not export oriented, and that its limited exports focused on other markets such as Latin America, further supporting the Commission's analysis and views that imports from Brazil are competing differently than other subject imports. *See* CSN and USIMINAS Joint Final Comments at 12-13, PR 241 (noting the geographic proximity with the Argentine market and the increasing demand for automotive market in Latin America); CSN and USIMINAS Joint Posthearing Br. at 8-9 (noting regional trade programs in Latin America making it an attractive market where USIMINAS achieves premium margins on CRS exports), Attachment 1 at 27-31, Exhibit 6 (noting efficient logistics and tariff preferences under the MERCOSUR agreement), PR 220.

Thus, when reviewing Brazil's unique conditions of competition, the Commission correctly concluded that the Brazilian industry is not export oriented, a key differentiating factor when compared to subject imports from Korea.  Views at 58-59.

### 4. Foreign Production

Plaintiffs did not address nor challenge the Commission's finding that the Brazilian industry has substantially less production than the Korean industry.  Views at 60-61.  Indeed, the Brazilian production of CRS during 2018-2020 period ranged between [          ] short tons and [          ] short tons, whereas the South Korean industry's production of CRS during this period ranged between [          ] and [          ] short tons.  Staff Report, at Table IV-8 at Table IV-31, CR240; CSN and USIMINAS Joint Final Comments at 12-13, PR 241 (noting the reduced capacity including shuttered slab production and strategical use of more purchased slabs for production, and decrease in gross production).

The Commission therefore also correctly concluded that the Brazilian industry has comparatively less production when reviewing Brazil's unique conditions of competition.  Views at 58-59.

***

In conclusion, the Commission's exercise of its discretion not to cumulate subject imports from Brazil with imports from other subject countries was supported by substantial evidence.  *See Nippon Steel,* 458 F.3d at 1359.  *See also U.S. Steel Grp. v. United States*, 96 F.3d 1352, 1357 (Fed. Cir. 1996).

### D. No Commission Past Practice Exists that Overcomes Its Broad Discretion Not to Cumulate in this Case

Plaintiffs also assert that the Commission's determination not to cumulate imports from Brazil should be overturned because the agency allegedly departed from an established "practice" to disregard the relevance of Section 232 measures in its decumulation analysis.  Such a departure from established practice, Plaintiffs argue, is not permitted unless it is adequately explained and supported.   *See* Pl. Mem. at 6, 37-8 (arguing that the Commission "failed, however, to explain why it took a different approach for Brazil in the cold-rolled five-year reviews").  This is clearly wrong, for several reasons.

#### 1. The Standard Articulated in DAK Americas LLC Is Not Relevant to the Commission's Statutory Discretion on Cumulation

First, Plaintiffs mischaracterize the legal standard.  The Commission is not acting outside of its statutory discretion to make cumulation determinations in sunset reviews by not citing to and distinguishing every prior ITC case involving Section 232 measures.  *See* Pl. Mem. at 41 (arguing that the Commission must not "treat{} similar cases differently without an adequate explanation).

Plaintiffs cite to *DAK Americas LLC*, 456 F. Supp. 3d 1340, 1354 (Ct. Int'l Trade 2020) for this purported rule – which this Court explains is "persuasive but unpublished and non-binding authority for the court."  However, the *DAK* case is not on point for Plaintiffs' intended purpose – the Commission's assessment of Section 232 measures in the context of the Commission's discretion on cumulation in sunset reviews.   *DAK* involved a negative material injury determination in an investigation and the Commission's assessment under the statutory factors governing such a determination.  *Id.* at 1347.  In *DAK*, the court assessed the Commission's determination on underselling—a mandatory statutory factor in material injury determinations.  *Id.* at 1357.  The plaintiff's complaint in *DAK* was related to a history of Commission practice on mixed underselling data ***going back to 1980, and consistently affirmed by this Court***.  *Id.* at 1356-7.  The Court's assessment of the Commission's 40+ year practice under a mandatory statutory provision on material injury is a far cry from the Commission's discretionary decumulation determinations – in particular since 2018 when Section 232 measures entered into force and were sometimes one of several elements of the Commission's cumulation analysis.

Contrasting with the legal standard underlying *DAK*, this Court has explained that sunset review cumulations are *sui generis*: "In fact, case law suggests that five-year reviews are considered of limited precedential value."  *See Allegheny* at 1380-1 (dismissing the relevance of contrasting prior sunset reviews as having immaterial precedential weight to impact the Commission's discretion).  Plaintiffs have not identified any legal standard involving Section 232 measures that has any bearing on this Court's review of a cumulation determination in a sunset review.

2. ***Plaintiffs cannot identify any pattern involving Section 232 quota measures – and certainly no established ITC practice***

Plaintiff has not identified any basis to abridge the Commission's discretion on cumulation determinations in a sunset review on the basis of any purported Commission past practice. In particular, the cases Plaintiffs have cited which involve Section 232 measures lack any discernable pattern, much less a consistent practice. Plaintiffs have cited five cases where Section 232 measures were addressed. *See* Pl. Mem. at 38-41. Two of the cited cases, *Clad Steel Plate from Japan* and *Tin- and Chromium-Coated Steel Sheet from Japan* only involve one country— therefore those cases have nothing to do with the Commission's discretion to decumulate. *See* Pl. Mem. at 41. One case, *Non-Oriented Electrical Steel from China, Germany, Japan, Korea, Sweden, and Taiwan* does not involve Brazil, and like in the present case, the Commission assessed in detail the possible impact of Section 232 measures for the various countries. *See* Inv. Nos. 701-TA-506 and 508 and 731-TA-1238-1243 (Review), USITC Pub. 5140 (Dec. 2020) at 11-25 (the Commission assessing the non-quota measures from the various countries, examining the size of the quota for South Korea, finding that each subject industry has available production capacity, and finding that each subject industry is export oriented). *Id.* The two other cases cited involve quotas on imports from Brazil, but have divergent determinations on cumulation, grounded in the individual conditions of competition present on the record in those cases. *See Stainless Steel Bar* (which decumulated imports from Brazil, as discussed below); *Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, and Trinidad and Tobago* (Third Review), USITC Pub. 5100 (Aug. 2020) at 21-2 (cumulating imports from Brazil because, i.e., Brazil was the largest source of exports from any of the subject countries and Brazil had been exporting significant out-of-scope quantities of wire rod to the U.S. market).

It makes complete sense that the Commission would not establish any consistent practice related to Section 232 measures that would restrict the Commission's discretion on cumulation in

sunset reviews.  Different cases involve different countries, with different types of Section 232 measures, different TRQ limits, different quota limits, and other different conditions of competition that distinguish them.  And not all Section 232 measures are created equal.  Different types of Section 232 measures (e.g., tariffs, quotas including at different thresholds, and TRQs including at different thresholds) may have different impacts on each particular product and market, and therefore represent potentially very different conditions of competition.  In fact, in these very sunset reviews, the Commission chose to cumulate imports that were subject to Section 232 tariffs (India and China), a Section 232 quota (South Korea), and Section 232 TRQs (Japan and the UK).  The Commission's decumulated imports from Brazil were subject to a very low absolute Section 232 quota, in addition to several other factors as detailed above.  In each case, the Commission is undertaking a fact-specific inquiry when determining whether to decumulate particular countries.  This is squarely within its statutory mandate and its discretion under the law.

### 3. *The Commission has previously decumulated imports of steel products from Brazil on similar bases as the current case*

The Commission has decumulated imports of steel products from Brazil in other cases, including on the basis of similar facts that exist in the present case.  This demonstrates that the nature of the Brazilian steel industry and the conditions of competition for each individual steel product in the U.S. market are what dictate the Commission's discretionary cumulation determinations – not any invented Commission past practice involving Section 232 measures.  We summarize several of those cases below.

### a)  Stainless Steel Bar from Brazil, India, Japan, and Spain

In the fourth sunset review in *Stainless Steel Bar from Brazil, India, Japan, and Spain*, the Commission decumulated imports from Brazil from other subject imports.  *See* USITC Pub. 4820 (Sept. 2018).  The Commission explained that "{s}ubject imports from Brazil maintained a

presence in the U.S. market during the POR but at relatively small volumes," and that subject imports will remain small in the reasonably foreseeable future because of the Section 232 quota, which limits maximum volumes to just 0.5% of apparent U.S. consumption. *Id*. at 16-17. The Commission further explained that "given the limited volume of U.S. exports available to the Brazilian industry, we see no incentive for {the Brazilian producer} to price aggressively to win sales and market share; on the contrary, it would likely seek to maximize profits on this limited quota amount." *Id.* at 17. The Commission also determined that the Section 232 measures were likely to continue through the reasonably foreseeable future, as there was nothing in the record to the contrary. *Id.* The Commission decumulated on the basis of no discernable adverse impact from imports from Brazil. *Id.*

Plaintiffs attempt to dismiss the *Stainless Steel Bar* case as "not relevant," likely because it is contrary to Plaintiffs' narrative about an invented past practice involving Section 232 measures. Pl. Mem. at 40. To the contrary, this case is relevant insofar as it is an example of a Commission determination on cumulation that shares multiple similarities to the present case. The Commission in both cases pointed to several factors (not just one) as the bases for decumulation of steel products from Brazil, including the small volume of "virtually absent" imports from Brazil during the POR, and the highly restrictive Section 232 quota limiting Brazilian imports to a very small fraction percent apparent consumption. *Cold-Rolled Steel* at 42-3.

### b) Hot-Rolled Flat-Rolled Carbon-Quality Steel Products

In the second sunset review of *Hot-Rolled Flat-Rolled Carbon-Quality Steel Products from Brazil, Japan, and Russia*, the Commission decumulated imports from Brazil. *See* USITC Pub. 4237 (June 2011). This sunset review was prior to any Section 232 measures. However, it is another example of a Commission determination to decumulate imports of a steel product from

22

Brazil on the basis of many of the same factors as in the present here.  The Commission explained that imports from Brazil are "significantly less export oriented" than other sources of subject imports, that Brazilian producers shipped primarily to the home market during the POR, and that imports from Brazil had previously had a "much smaller and more stable presence in the U.S. market" than others subject imports.  *Id*. at 16-17.  In the present case, the Commission pointed to similar factors as the bases for decumulation beyond the Section 232 quota, including that the Brazilian industry is less export-oriented than other sources of subject imports and that there was only a small volume of "virtually absent" imports from Brazil during the POR. Views at 42-3.

### c) Hot-Rolled Steel and Carbon and Alloy Steel Cut-to-Length Plate

The Commission has recently made determinations to decumulate imports from Brazilian steel products in sunset reviews.  *See Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, USITC Pub. 5380 (Nov. 2022) at 60-62 and *Carbon and Alloy Steel Cut-to-Length Plate from Austria, Belgium, Brazil, China, France, Germany, Italy, Japan, South Africa, South Korea, Taiwan, and Turkey*, USITC Pub. 5399 (Jan. 2023) at 61-4.  The Commission's determinations not to cumulate in these two recent cases are on very similar bases as in the present case.  These cases are further examples that show that the Commission has consistently addressed similar facts in a similar fashion when determining whether to decumulate imports of steel products from Brazil.

## VI.   CONCLUSION

For the foregoing reasons, the Commission has lawfully exercised its discretion to decumulate imports from Brazil in the underlying sunset reviews.  Plaintiffs' brief improperly asks this Court to seize the Commission's statutory discretion to decumulate in sunset reviews, establish new law, reweigh the evidence, and make findings that this Court has never made before.  There

is no basis for this Court to remand for further agency review.  This Court should deny Plaintiff's motion and affirm the Commission's negative determinations for Brazil.

Respectfully submitted,

_/s/ Craig A. Lewis_
Craig A. Lewis
Michael G. Jacobson

HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC  20004
202-637-5600

_Counsel to CSN S.A. and CSN LLC_

_/s/ Lian Yang_
Lian Yang
Lucas A. Queiroz Pires

ALSTON & BIRD LLP
The Atlantic Building
950 F Street, NW
Washington, DC 20004
202-239-3300

_Counsel to USIMINAS_

Dated: June 27, 2023

**<u>CERTIFICATE OF COMPLIANCE</u>**

       Pursuant to Chambers Procedures 2(B)(1) and (2), the undersigned certifies that this brief includes 6,912 words, exclusive of the exempted portions, as provided in paragraph 2(B)(1). In preparing this certificate, the undersigned has relied upon the word count feature of the word-processing system used to prepare the submission.

Dated: June 27, 2023

       <u>*/s/* **Craig A. Lewis**</u>
       Craig A. Lewis
       Michael G. Jacobson

       HOGAN LOVELLS US LLP
       Columbia Square
       555 Thirteenth Street, NW
       Washington, DC  20004
       202-637-5600

       *Counsel to CSN S.A. and*
       *CSN LLC*

<u>*/s/* **Lian Yang**</u>
Lian Yang
Lucas A. Queiroz Pires

ALSTON & BIRD LLP
The Atlantic Building
950 F Street, NW
Washington, DC 20004
202-239-3300

*Counsel to USIMINAS*